**UNITED STATES of America, Appellee,**

v.

**Ronald Lee GORDON, Appellant.**

No. 91–1653.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1991.

Decided Jan. 23, 1992.

Philip Moon, Fayetteville, Ark., argued, for appellant.

Steven Snyder, Asst. U.S. Atty., Ft. Smith, Ark., argued, for appellee.

Before ARNOLD,[*] Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

A jury convicted Ronald Lee Gordon of aiding and abetting his co-defendant, Kenneth Wayne Stephens, in knowingly and intentionally manufacturing a controlled substance, phenylacetone (P–2–P), in violation of 21 U.S.C. § 841(a)(1) (1988). On appeal he attacks his sentence, arguing that application of the Sentencing Guidelines Career Offender provision, United States Sentencing Commission, *Guidelines Manual* § 4B1.1 (Nov. 1990), resulted in a 262 month sentence so disproportionate to the gravity of his crime that it violates the eighth amendment. He also argues that if the career offender provisions were not applied, then a number of errors in the presentence investigation report would lead to an erroneous sentencing calculation. Because we conclude that the career offender provisions as applied in this case do not violate the eighth amendment, we need not reach Gordon's attacks on the presentence investigation report. We affirm the judgment of the district court.[1]

At trial, the prosecution showed Gordon assisted in a P–2–P manufacturing operation. A DEA agent, Steve Lowry, posed as a chemical supplier, and engaged Gordon's co-defendant, Stephens, in a conversation in which Stephens told Lowry, "[A]s long as you keep us supplied with the PA [phenylacetic acid—a necessary ingredient for P–2–

---

[*] The Honorable Richard S. Arnold became Chief Judge of the United States Court of Appeals for the Eighth Circuit on January 7, 1992.

1. The Honorable H. Franklin Waters, Chief Judge United States District Court for the Western District of Arkansas.

P], we'll keep you supplied with dope [methamphetamine]." Stephens agreed to trade Lowry four ounces of methamphetamine in return for fifteen pounds of phenylacetic acid. Lowry testified that "P–2–P is the initial stage to amphetamine." Lowry said Stephens "indicated that he was going to begin manufacture immediately, that I would have my four ounces [of methamphetamine] shortly." Lowry put the phenylacetic acid in Stephens' car trunk.

Two days later, Lowry and others tracked Stephens to a trailer in the woods, which Gordon rented. The agents waited in the woods that night, hoping to smell phenylacetic acid, which has a highly distinctive odor and which would indicate that someone was manufacturing drugs in the trailer. When an officer reported smelling the phenylacetic acid, the agents obtained a search warrant for the trailer and executed the warrant about seven o'clock the next morning. When Gordon and Stephens came out of the trailer, the whole area smelled of "P–2–P, phenyl–2–propanal and an acetic smell which is associated with acetic anhydride [another ingredient of P–2–P]." In the trailer and attached shed, agent Lowry found "a makeshift laboratory" that "was, in fact, cooking." Officers found various chemicals that "are all commonly associated with a [P–2–P or amphetamine] lab." Next to the reaction vessel in the lab, Lowry found a brown paper bag which was inscribed with chemical symbols for the three chemical ingredients of phenylacetone. In a truck at the lab site, the officers also found a list of chemicals commonly used to manufacture phenylacetone and methamphetamine.

The reaction vessel from the lab contained phenylacetic acid and phenylacetone in an undetermined amount. There was testimony that fifteen pounds of phenylacetic acid could be used to manufacture

seven to seven and a half pounds of phenylacetone.

At the time of conviction, Gordon had at least two previous convictions for controlled substance felonies,[2] one of which involved a concealed weapon.

Gordon does not challenge his conviction, nor does he argue that the terms of the career offender provisions of the Sentencing Guidelines, U.S.S.G. § 4B1.1, are not applicable to his case. Gordon's argument is that the career offender provisions result in a guideline sentence range beginning at 262 months,[3] which Gordon argues, is unconstitutionally disproportionate to the gravity of his offense.

Taking the plurality opinion in the recent case of *Harmelin v. Michigan*, —— U.S. ——, 111 S.Ct. 2680, 2702, 115 L.Ed.2d 836 (1991) (Kennedy, J., concurring in part and concurring in the judgment), as our guide, we conduct a "narrow" review, *id.* 111 S.Ct. at 2702, to determine if the sentence is grossly "disproportioned" to the crime. *Id.* (citations omitted). The result of our review in this case is dictated by the *Harmelin* holding, since *Harmelin* approved a life sentence for a first offense of cocaine possession, and Gordon has been convicted of a series of drug offenses and has received a lesser sentence than that approved in *Harmelin*. Gordon's eighth amendment argument has no merit.

Gordon also argues that the presentence report incorrectly calculated what his base offense level, total offense level, and criminal history category would have been in the absence of the career offender provision. Since Gordon's attacks on the presentence investigation could only change his sentence if we first invalidated the career offender provisions, we need not discuss these objections.

We affirm the judgment of the district court.

---

**2.** Gordon argues that one of the convictions reported in the presentencing investigation should not be counted in computing his criminal history category, but does not deny that he has the two convictions necessary to invoke the career offender provision.

**3.** U.S.S.G. § 4B1.1 provides that for a career offender with an offense that carries a statutory

maximum of 25 years or more (as does section 841(a) after a previous controlled substance conviction, 21 U.S.C.A. § 841(b)(1)(C) (West 1991 Supp.)), the offense level is 34 and the Criminal History Category is VI. This results in a sentencing range of 262–327 months. U.S.S.G. Ch. 5, Pt. A.

HEANEY, Senior Circuit Judge, concurring, joined by Chief Judge ARNOLD.

I concur in the court's opinion. I write separately only to note that Gordon's 262–month sentence exemplifies what is wrong with the career offender provisions passed by Congress and implemented by the Sentencing Commission. In my view, the career offender provisions, like mandatory minimum sentences, "create penalties so distorted as to hamper federal criminal adjudication." Federal Courts Study Committee, Judicial Conference of the United States, *Report of the Federal Courts Study Committee* 134 (1990) (discussing mandatory minimum penalties).

At first blush, the career offender provisions appear to be sensible, neutral, and fair. They require that a court answer two simple questions: (1) has this offender previously been convicted of two felonies involving drugs or violence; and (2) is the instant offense a felony that is a crime of violence or a controlled substance offense. Once both questions are answered "yes," the offender is denominated a "career offender" and is subject to a real-time prison sentence at or near the statutory maximum. What could be more fair and equal?

As one commentator has noted, however, treating too many unlike cases as if they are alike will violate rather than promote the principle of equality. Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation*, 58 U.Chi.L.Rev. 901, 916 (1991). I believe this to be a chronic problem with the current guidelines system, and it certainly is aggravated by the mandatory minimum sentences and the career offender provisions.

Like the mandatory minimums, the career offender provisions direct the court to ignore many relevant facts about the offender and the crime and to fix the offender's sentence based on only one or two "facts." *Cf.* United States Sentencing Commission, *Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System*, 26 (1991) (criticizing mandatory minimum sentences, which focus on one indicator of offense seriousness and perhaps one indica-

tor of criminal history, for ignoring offense and offender characteristics and causing similar sentences in widely divergent cases). Thus, as long as two prior offenses fit into the categories set forth in section 4B1.1, the prior offenses are counted. The career offender provisions do not consider the defendant's role in the prior offenses, the defendant's age at the time he committed the offenses, the number of years that have elapsed since his prior criminal conduct, or the relative severity of the prior offenses. I acknowledge that any drug or violent felony conviction is a serious matter, but to treat all prior convictions the same is to ignore the fact that some are more serious than others.

Similarly, the career offender provisions direct the court to disregard what actually happened in the current offense. The court can make the most careful findings of fact about the proper offense level and the defendant's current criminal history score, but these are irrelevant if the guidelines range called for by the current offense is lower than that called for by the career offender provisions. This is in direct conflict with one goal of the guidelines, which is to individualize punishment in light of *case-specific* offense characteristics.

In the present case, the career offender provisions pushed Gordon's criminal history category from IV to VI because Gordon had two prior felony drug convictions from 1980 and 1982. Gordon's 1980 conviction involved marijuana manufacturing and trafficking, while his 1982 conviction involved only marijuana trafficking. Two of Gordon's five co-defendants in the 1980 cases were his father and his older brother (Gordon was 24 at the time). The record does not reveal Gordon's role in the 1980 offenses, the amount of marijuana involved in either the 1980 or 1982 offenses, or the nature of those offenses. Under the career offender provisions, however, such relevant facts are of no importance. The only thing that matters is the existence of the two prior offenses. To focus only on the existence of prior convictions without looking into what actually happened years ago, however, results in irrational and unjust sentences.

Had the career offender provisions not been in effect, Gordon's offense level for the current offense would have been somewhere between 12 and 28, depending on the amount of drugs for which the district court held Gordon responsible. Indeed, the district court indicated that it thought Gordon was not a leader, and suggested that there was only a small amount of drugs manufactured. With a criminal history category of IV, Gordon's guidelines sentence could have been as low as 21 months, or as high as 137 months. Any of these guidelines sentences would reflect better the seriousness of the offense and Ronald Gordon's circumstances than the 262–month sentence required by the career offender guideline. The district court was troubled by what it saw as an excessive sentence, and so am I, but unfortunately *Harmelin* requires us to affirm.