UNITED STATES of America, Plaintiff–Appellant, Cross–Appellee,

v.

Armando REYES, Defendant–Appellee, Cross–Appellant.

Nos. 92–30030, 92–30059.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1992.

Decided Nov. 3, 1993.

Charles F. Gorder, Jr., Asst. U.S. Atty., Portland, OR, for plaintiff-appellant-cross-appellee.

Rita J. Radositiz, Asst. Federal Public Defender, Eugene, OR, for defendant-appellee-cross-appellant.

Before: HUG, FLETCHER and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

The Government appeals the district court's downward departure from the Sentencing Guidelines in sentencing career offender Reyes. It argues that the district court ignored the career offender guideline provisions, U.S.S.G. § 4B1.1, by departing from a sentencing range of 210–262 months and setting a sentence of thirty-three months. Reyes cross-appeals the district court's failure to allow a waiver of jury trial under Fed.R.Civ.P. 23. Defendant argues that the court should have required the Government to articulate a non-racial motive for its refusal to consent to waiver. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. The jurisdiction of this court rests on 18 U.S.C. § 3742(b) (Sentencing Guidelines) and 28 U.S.C. § 1291 (Final Judgments).

## FACTS

Armando Reyes, a twenty-nine-year-old citizen of Mexico, illegally crossed the border to the United States at the age of fourteen. He has been deported to Mexico four times, the last as the result of a felony drug conviction. (PSR 3). In October 1990, within two months following his most recent deportation, he was arrested by the Portland Police Bureau for selling 2.8 grams of marijuana in the Old Town section of Portland. At that time another 2.7 grams of marijuana was found in his possession. Over a month later, in November 1990, Reyes sold .14 grams of cocaine to an undercover officer. Prior to arrest he swallowed the remaining drugs in his possession.

The Government became involved in this case upon the discovery of Reyes' status as an illegal alien. It brought a three-count Grand Jury Indictment for distributing marijuana (under 21 U.S.C. § 841(a)(1)), distributing cocaine (also under 21 U.S.C. § 841(a)(1)), and for illegal reentry (under 8 U.S.C. § 1326). Reyes filed a trial memorandum waiving his right to a jury trial and requesting that the court order a bench trial over the Government's objection. The court denied the request and the jury found Reyes guilty on all three counts.

According to the presentence report, Reyes has been arrested and sentenced for six other offenses: (1) in 1984 in California for use of opiates; (2) in 1987 in California for possessing for sale of six "baggies" of marijuana; (3) in 1987 in Washington for attempted theft from a department store; (4) in 1987 in Washington for obstructing a public officer; (5) in 1989 in Oregon for possession of drugs (including .45 grams of cocaine and .10 grams of heroin); and (6) in 1989 in Oregon for possessing and delivering $20–worth of cocaine.[1] The probation officer computed Reyes' criminal history and offense level points without reference to the career offender provisions of the guidelines. He assigned Reyes a base offense level of twelve, adjusting it to fourteen for multiple counts, and calculated criminal history points of twelve, placing Reyes in criminal history category V. The resulting guideline range was 33–41 months.

---

1. The presentence report also reflects that upon his various arrests Reyes has identified himself by at least four other names, three of which share a common surname.

In its objections to the report, the Government pointed out that the previous drug-related offenses triggered the application of the career offender provisions, U.S.S.G. § 4B1.1.[2] Under these provisions, because the offense of conviction[3] was subject to a maximum statutory penalty of twenty years, 21 U.S.C. § 841(b)(1)(C), Reyes qualified for a base offense level of thirty-two. As a career offender, he automatically fell within criminal history category VI. The career offender sentencing range is 210–262 months, producing a choice of sentences almost seven times as long as those applicable under non-career offender guidelines.

The probation officer did not modify his prior report and recommendation. The report recommended that if the career offender provisions were found to apply, a downward departure be made from the applicable range. The sentencing judge agreed with the Government that the career offender provisions applied to Reyes, but, on the recommendation of the probation officer and defense counsel, departed from the career offender range and fixed a sentence of thirty-three months. He also ordered a three-year term of supervised release and participation in a substance abuse treatment program.

## STANDARDS OF REVIEW

■ Under the three-part standard of review set forth for downward departures from the Sentencing Guidelines by *United States v. Lira–Barraza*, 941 F.2d 745, 746–47 (9th Cir.1991) (en banc); *United States v. Valdez–Gonzalez*, 957 F.2d 643 (9th Cir.1992); *United States v.. Floyd*, 945 F.2d 1096, 1098–99 (9th Cir.1991), the panel must (1) review de novo whether the district court was authorized to depart downward from the career offender section of the guidelines; (2) review for clear error factual findings supporting

the existence of circumstances which justify downward departure; (3) review for abuse of discretion the reasonableness of the extent of departure within the meaning of 18 U.S.C. §§ 3742(e)(3) and (f)(2). *United States v. Martinez–Gonzalez*, 962 F.2d 874 (9th Cir. 1992).

■ Whether the district court should have allowed the defendant to waive trial by jury over the objection of the Government is a question of law and subject to de novo review. *United States v. McConney*, 728 F.2d 1195, 1200–1201 (9th Cir.), *cert. denied* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## DISCUSSION

## I. DOWNWARD DEPARTURE FROM CAREER OFFENDER CATEGORY

■ In accordance with its mandate from Congress,[4] the Sentencing Guidelines Commission set forth provisions to enhance substantially the sentences received by career offenders, including "repeat drug offenders" and "repeat drug traffickers."[5] Under the guidelines:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Although the career offender guidelines do not set out particular grounds upon which a · court may depart downward from recommended sentencing ranges, the Ninth Circuit and other circuits

---

2. It cited the 1987 California "Possession for Sale of Marijuana" offense and the 1989 Oregon "Possession and Delivery of Cocaine" offense (related to the other 1989 Oregon "Possession of Cocaine and Heroin" offense) as the first and second prior felony convictions, respectively.

3. Count II (for sale of .14 grams of cocaine) carries the 20–year maximum penalty upon which the career offender provisions are computed. 21 U.S.C. § 841(b)(1)(C). Count I (related

to the marijuana transaction) carries a 5–year maximum. 21 U.S.C. § 841(b)(1)(D).

4. 28 U.S.C. § 994(h) requires the Commission to "specify a sentence to a term of imprisonment at or near the maximum term authorized" by statute for certain offenders.

5. S.Rep. No. 225, 98th Cong., 2d Sess. 37 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3220, 3358.

have held that the sentencing judge may "rely on 'any ... policy statement[ ] or commentary in the guidelines that might warrant consideration in imposing sentence.'" *United States v. Lawrence*, 916 F.2d 553, 554 (9th Cir.1990) (citing U.S.S.G. § 1B1.1); *see also United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir.1991); *United States v. Pinckney*, 938 F.2d 519, 521 (4th Cir.1991); *United States v. Adkins*, 937 F.2d 947, 951 (4th Cir.1991); *United States v. Senior*, 935 F.2d 149, 151 (8th Cir.1991); *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990). Since it is well established that a downward departure from career offender status is permissible, *Lawrence*, 916 F.2d at 554, we look only to the circumstances of this case to determine whether the district court's stated basis for departure is appropriate.

In sentencing Reyes, the district court found the career offender guidelines applied. However, he explained:

> I am going to depart downward to the level 14 and the range of 33 to 41 months. I think in this case it's clear that the previous criminal history seriously overrepresents the history from the standpoint of the Guidelines. I can't conceive that the Guidelines didn't intend to give a judicial officer authority to depart downward under circumstances such as this. That being the case, I will depart.

Immediately before imposing this sentence the court noted that Reyes was guilty of very "minor offense[s]," and reasoned against sentencing "comparatively minor offenders ... to prison as long as the Guidelines would indicate." (ER 20). Adopting the recommendation of the probation officer, the court relied on Sections 4A1.3 and 5K2.0 which authorize departure in "limited circumstances." *See United States v. Cruz–Ventura*, 979 F.2d 146, 150 (9th Cir.1992) (citing *United States v. Streit*, 962 F.2d 894, 903 (9th Cir.1992)).

**A. Appropriate Basis**

■ Downward departure is not permitted unless the district court has identified a "mitigating circumstance of a kind or to a degree" the Sentencing Commission did not adequately take into account when formulating the guidelines. 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. A reviewing court "must consider the reasons for departure actually articulated by the sentencing court." *United States v. Montenegro–Rojo*, 908 F.2d 425, 427 (9th Cir.1990).[6] "There is, however, no requirement that the sentencing judge recite the specific language of 18 U.S.C. § 3553(b)," the same language incorporated in Section 5K2.0. *United States v. Sanchez*, 933 F.2d 742, 745 (9th Cir.1991); *United States v. Ramirez Acosta*, 895 F.2d 597, 601 (9th Cir. 1990).

Section 4A1.3 indicates that

> [t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history.... The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category ... and therefore consider a downward departure from the guidelines.

In the district court's view, Reyes' criminal history suggested he was a "comparatively minor offender." His conduct was not at all of the magnitude of seriousness of most career offenders. Reyes' offenses involved considerably smaller amounts of drugs than those which would trigger the same sentence under the career offender provisions. Convicted for selling .14 grams of cocaine, he was subject to the same base offense level and sentencing range as if he had sold almost 4000 times that much. 21 U.S.C. § 841(b)(1)(C). Under the career offender guidelines a defendant convicted for a fraction of one gram of cocaine is accorded the harshest punishment due an offender trafficking in up to 500 grams. 21 U.S.C.

---

**6.** The Government speculates that the court departed for the unstated reason of Reyes' status as an untreated drug addict, a basis urged upon it at the sentencing hearing by defendant. *Cf. United States v. Sanchez*, 933 F.2d 742, 747 (9th Cir.1991) (nonviolent offense committed as a result of involuntary drug use may be subject to downward departure). Because the record before us does not indicate that the court did depart for this reason, we do not consider it.

§ 841(b)(1)(C). Were he sentenced without reference to the career offender provisions, he would be subject to the same offense level and sentencing range as an offender associated with only up to twenty five grams of cocaine. *See* U.S.S.G. § 2D1.1(16). In Reyes' case that would mean he and another offender of equivalent criminal history would be sentenced to the same punishment range for offenses involving only 200 times (rather than 4000) times as much cocaine.[7]

The Government formulates the stated basis for departure incorrectly. It focuses on the "small quantity" or "miniscule" amounts of drugs involved in Reyes' offenses, choosing to state the court's reason for departure as if it were a simple quantity-based argument fixing only upon the absolute amount of drugs at stake in the various offenses. The sentencing judge undertook a more nuanced approach based on comparison. Instead of emphasizing the absolute quantities of drugs involved, he cast the issue of quantity in comparative terms. Reyes' criminal history was "comparatively minor." His offenses were "minor" as *compared* to others (not small on some *absolute* scale). This approach focuses on quantity only as a means to analyze the comparative treatment of offenders. Quantity serves merely as the means to compare the similar treatment of defendants whose offenses differ by exceptional orders of magnitude.

Not crediting the court's reason for departure, the Government argues that departure on the basis of the minuteness of the quantities is not permitted. It contends that the quantity of drugs involved cannot serve as a basis for departure because quantity already has been taken into consideration in the career offender provisions. Section 4B1.1 links base offense levels with the maximum statutory penalty available for the offense of conviction. If the defendant is convicted of an offense which subjects him to a minimum of five (but maximum of ten) year term, the career offender provisions assign him a base offense level of seventeen. If the defendant is subject to a minimum of ten (but maximum of fifteen) year term, he has a base offense level of twenty four. If he is subject to a minimum of fifteen (but maximum of twenty) year term, he is assigned an offense level of thirty-two. The chart is graduated in increments of five years of statutorily permitted penalties. Thus, while the guidelines themselves indicate no graduation based on quantities, the statutes they incorporate do. *See e.g.,* 21 U.S.C. § 841(a). In the statutory context relevant here a penalty of five years attaches to drug convictions for anything less than fifty kilograms of marijuana;[8] a penalty of twenty years for 50–100 kilograms of marijuana;[9] a penalty of forty years for 100 to 1000 kilograms of marijuana.[10] Thus the Government argues, "[i]n drug cases, maximum penalties vary because [the penalty provision of the statute they depend upon] keys the maximum penalty to the quantity of drugs sold. Consequently, as drug quantities vary, so does the career offender's offense level." Appellant's Opening Brief at 13. In its view this linked system for assigning one of the two elements[11] necessary to determine a guideline sentencing range evidences adequate consideration of the quantities of drugs involved in offenses subject to the career offender provisions. It cites Second and Sixth Circuit precedent directly supporting its formulation and analysis of the "small-quantities" basis for departure. *United ed States v. Richardson,* 923 F.2d 13, 17 (2d Cir.1991) (Commission adequately took small quantities into account, downward departures for career offenders convicted for small amounts of drugs are not justified on these grounds); *United States v. Hays,* 899 F.2d 515, 518–520 (6th Cir.1990), *cert. denied,* 498

**7.** Based on the amount of marijuana he attempted to distribute (2.8 grams), Reyes was subject to the same offense level and sentencing range as someone distributing 18,000 times that much. 21 U.S.C. § 841(b)(1)(D). A defendant distributing less than three grams of marijuana could receive the same punishment as one peddling fifty kilograms. *Id.*

**8.** 21 U.S.C. § 841(b)(1)(D).

**9.** 21 U.S.C. § 841(b)(1)(C).

**10.** 21 U.S.C. § 841(b)(1)(B).

**11.** The second element, criminal history, is assigned automatically to every defendant who qualifies as a career offender. U.S.S.G. § 4B1.1.

U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990) (same).

Because we conclude that the sentencing judge relied on a different basis for departure than the one described by the Government (and evaluated by *Richardson* and *Hays*), our analysis is different. The question we address is not whether the career offender guidelines took into consideration small amounts of drugs, but whether it adequately considered the disproportionate treatment of drug offenders sentenced to the same penalty range for offenses involving drug quantities of exceptionally different orders of magnitude.[12]

■ A sentencing judge is "entitled to rely on 'any ... policy statement[ ] or commentary in the guidelines that might warrant consideration in imposing sentence.' " *Lawrence*, 916 F.2d at 554 (citing U.S.S.G. § 1B1.1); *Adkins*, 937 F.2d at 951–52. One of the three principles upon which the Sentencing Guidelines is founded is "proportionality in sentencing through a system that imposes appropriately different sentences for criminal conduct of differing severity." U.S.S.G. Ch. 1, Pt. A(3), intro. comment. This commitment to proportionality is reflected in the guideline provisions supporting the district court's decision to depart. It undergirds Congress's mandate that a court depart from the guidelines, not only if a "kind" of mitigating circumstance was not taken into account but if it was not taken into account to a sufficient "degree." 18 U.S.C.

§ 3553(b); U.S.S.G. § 5K2.0. It is the reason for Section 4A1.3's elaboration of the concept of over-representation in terms of recidivism *and* seriousness.[13] Seriousness, in this context, is only defined comparatively. Finally, the introductory chapter to the guidelines announces a "heartland" approach to sentencing. Despite the fact that in certain circumstances "a particular guideline linguistically applies," the guidelines specifically contemplate that "conduct significantly differ[ing] from the norm" may warrant departure. U.S.S.G. Ch. 1, Pt. A intro. § 4(b); *see also United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir.1991).

In declaring that "comparatively minor offenders" should not receive the same "career offender status," Transcript of Sentencing Proceedings at 25, the district court found the Commission's consideration of the relationship between drug quantity and penalty among differently-situated career offenders inadequate. The "adequacy" enquiry goes to the comparative treatment of offenders with the same career offender base offense level, all of whom receive the same penalty range for very different amounts of drugs. On this view, the problem is not that the Commission did not take into consideration the relationship between quantity and penalty, but that it did not adequately do so because it did not focus sufficiently on the resulting disproportionate punishment accorded career offenders in the same category.[14] Implicit in this

---

12. This is an issue of first impression in the Ninth Circuit, but not in the sense framed by the Government. It appears that no other circuit has squarely considered it. *See United States v. Nichols*, 740 F.Supp. 1332, 1336–1338 (N.D.Ill. 1990), *aff'd on other grounds*, 937 F.2d 1257 (7th Cir.1991) (district court relies on comparative reasoning, but circuit affirms on other grounds); *United States v. Moore*, 968 F.2d 216, 226 n. 4 (2nd Cir.1992) (citing *Richardson*, 923 F.2d at 17) (district court relies on a comparison of sentences and amounts, but circuit court rejects for reasons focussed on amounts only).

13. In rejecting a "small quantities" basis for departure, the Second and Sixth Circuits focused on the career offender provisions to the exclusion of both these elements of Section 4A1.3. The *Richardson* court reasoned:

> The legislative history to the Guidelines and the language of the career offender proviso do not differentiate among types of dealers and do

not in any way advocate treating street dealing career offenders differently from other career offenders. On the contrary, consistent treatment of all offenders is encouraged ... The structure of section 4B1.1 is consistent with the legislative discussions advocating harsh treatment for all recidivists. The rule focuses on the recurrence of offenses rather than on the specifics of the most recent offense.

923 F.2d at 16. Its analysis rejects placing any importance on the relative seriousness of the conduct making up a defendant's criminal history and emphasizes recidivism alone. Under Section 4A1.3, a district court is expressly entitled to consider the seriousness of a defendant's criminal history even if he is a recidivist.

14. A similar argument has been made in support of Eighth Amendment challenges to the application of the career offender provisions. *See, e.g., United States v. Frazier*, 981 F.2d 92, 95–96 (3rd Cir.1992) (comparing punishments for cocaine

position is the conclusion that the penalty range is not sufficient to differentiate between two offenders with the same base offense level. The range afforded simply does not reflect the degree of differential in the seriousness of underlying criminal histories or offenses.[15]

We have noted that the Sentencing Act " 'creates a sentencing guidelines system that is intended to treat *all* classes of offenses committed by *all* categories of offenders consistently.' " (emphasis in original). *Lira–Barraza*, 941 F.2d at 748 (citing S.Rep. No. 225, 98th Cong., 1st Sess. 51, *reprinted in* 1984 U.S.C.C.A.N. 3234). In the context of the career offender provisions the Fourth Circuit has concluded that:

> The test for "career offender" status is certainly ... *fraught with potential imprecision* ... [The] definition encompasses an enormous variety of crimes ... [and] there is clearly a potential for *wide discrepancy in the gravity* of past antisocial conduct among "career offenders."

*Adkins*, 937 F.2d at 952 (emphasis added).

The *Nichols* district court mathematically evaluated the extent of potential imprecision flowing from certain applications of the career offender guidelines. *United States v. Nichols*, 740 F.Supp. 1332, 1337–38 (N.D.Ill. 1990), *aff'd* 937 F.2d 1257 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 989, 117 L.Ed.2d 151 (1992). Defendant Nichols "face[d] a minimum sentence of 35 years for possessing a gun while also possessing less than a gram of cocaine that he intended to distribute." *Nichols*, 740 F.Supp. at 1334. His prior offenses consisted of an assortment of residential burglaries, robbery, and auto theft. The court probed the relationship between the quantity of cocaine possessed by Nichols and quantities which could be possessed by another offender while still in the same base offense level and sentencing range. It concluded that although Congress had directed the Commission to sentence offenders at or near the maximum penalty authorized, it "would not have intended that somebody found guilty of intending to distribute less than one gram of diluted cocaine be sentenced at or near the maximum for intending to distribute nearly 500 grams of cocaine." *Nichols*, 740 F.Supp. at 1337. On facts much less extreme than those presented by Reyes, the court found that a downward departure was warranted, in effect, because of the lack of proportionality.[16]

---

and cocaine-base); *United States v. Gordon*, 953 F.2d 1106, 1107, 1108 (8th Cir.1992) (in light of Supreme Court precedent, no Eighth Amendment violation); *id.* (Heaney, Arnold JJ., concurring) ("any drug or violent felony conviction is a serious matter, but to treat all prior convictions the same is to ignore the fact that some are more serious than others"); *United States v. McLean*, 951 F.2d 1300, 1303–04 (D.C.Cir.1991) (career offender's sentence not "so grossly disproportionate to his crime that it violated the Eighth Amendment."); *see also* Allyn G. Heald, Note, United States v. Gonzales: *In Search of a Meaningful Proportionality Principle*, Brooklyn L.Rev. 455, 464–65 & n. 35 (1992) (quoting N.H. Const. of 1784, art. XVII, § 1 criticizing "undistinguishing severity [of punishment] ... exacted against all offenses"); Thomas E. Baker & Fletcher N. Baldwin, Jr., *Eighth Amendment Challenges to the Length of a Criminal Sentence: Following the Supreme Court "From Precedent to Precedent"*, 27 Ariz.L.Rev. 25, 50 (1985) (advocating an "as applied" theory of proportionality that would look to the context of each sentence challenged under the Eighth Amendment, context to include "the breadth of conduct included in the offense"). While these courts have found the argument without merit as a reason to invalidate the career offender provisions, under the guidelines it is an appropriate concern to be considered when deciding to depart. *See* U.S.S.G. Ch. 1, Pt. A(3); *see also* Albert W. Alschuler, *The Failure of Sentencing Guidelines: A Plea for Less Aggregation*, 58 U.Chi.L.Rev. 901, 950–51 (1991) ("[t]he aggregative style seems so ingrained however, that sentencing commissioners have apparently assumed that their task was to consider categories, not cases, and to allocate punishment wholesale"); Baker & Baldwin, *supra*, at 69 ("[p]roportionality analysis is similar to the analysis the sentencing court must make").

**15.** Facing the different question of whether a court may depart for small quantities of drugs, the Second Circuit viewed this position differently. The court concluded that the career offender provisions did adequately take into consideration the small quantities of drugs because a sentencing judge would be able to choose an individualized sentence from a career offender sentencing range. *Richardson*, 923 F.2d at 16.

**16.** The different types of crimes committed by Nichols and Reyes and the extent of each defendant's criminal history counsel against broadly comparing the case before us and the one decided by the *Nichols* district court. However, on the narrow point that defendants do share in common—an offense of conviction involving less

We have approved departure based on disproportionality in other contexts. Where a district court found that the conduct of drug "mules" "significantly differ[ed] from the norm," it departed on the ground that the mules' relative blamelessness warranted commensurate treatment. *Valdez–Gonzalez,* 957 F.2d at 649–50; U.S.S.G. Ch. 1, Pt. A intro. § 4(b); *see also* Alschuler, *supra* note 15, 917, 926–927 (guidelines not "as successful in treating offenders of comparable culpability alike"). These drug offenders were not subject to the career offender guidelines and the court departed in part on the strength of the analogy between its stated reason and the "minimal role" adjustment allowed in other circumstances not obtaining in that case, *e.g.,* U.S.S.G. § 3B1.2. *Id.* at 647–48. The sentencing judge here relied instead on the over-representativeness of Reyes' career offender sentence range and the relative lack of seriousness of the offenses and history that put him into career offender status. Significantly, all these stated bases share a common thread—comparative evaluation and concern for proportionate treatment of offenders.

Nor is it the case that every offender caught with small quantities of drugs will benefit from this evaluation. In the court's estimation, Reyes' criminal history differed from most other career offenders because it uniformly involved "minor" offenses. The facts of his case made application of a career offender sentence unusually over-representative. Other judges evaluating different criminal histories have found otherwise. The *Whyte* court reviewed the sentence of a de-

fendant caught with forty-one grams of crack and ten grams of cocaine whose past offenses included the sale of $10 of marijuana and possession of "1500 doses" and "200 plastic packages" of marijuana. *United States v. Whyte,* 892 F.2d 1170, 1171–72 (3rd Cir. 1989). Because the defendant had drawn a loaded gun on the police officer attempting to arrest him, his record suggested "he would carry a weapon as part of whatever needs arise from dealing drugs on the street." *Id.* at 1173 & n. 9. The district court concluded "I cannot conscientiously say that the defendant's criminal history was significantly less than that of most defendants in the same criminal history category." *Id.*

■ The court found that penalizing Reyes with the maximum term permitted for trafficking ordinarily reserved for drug quantities far in excess of the amounts for which he had been convicted (both in the instant and prior offenses) grossly over-represented the seriousness of his criminal history.[17] While we agree that the Commission did take into account varying penalties linked to different drug quantities (through the assignment scheme described *supra* at 1385), we conclude that the sentencing ranges resulting in exceptional discrepancies were not adequately considered. *See United States v. Ward,* 914 F.2d 1340, 1348 (9th Cir.1990) (departure for reasons already considered by the guidelines based on the conclusion that circumstances "significantly more egregious than the ordinary cases" warranting adjustment). Thus the district court was authorized to depart in this case because the de-

---

than a gram of cocaine—the court's examination of the orders of magnitude of drug quantities and penalties illustrates the disproportionality concern which we review here. The court noted that, sentenced outside the career offender provisions, Nichols and another offender having sold thirty times as much cocaine would be subject to the same penalty range. *See Nichols,* 740 F.Supp. at 1337 n. 5. By extension, within the career offender guidelines, he and an offender trafficking in 600 times as much cocaine would be sentenced in the same range. *Id.* at 1337. In the view of these two district courts, ratios of 30:1 (Nichols) and 200:1 (Reyes) did not grossly violate the disproportionality principle, whereas 600:1 (Nichols) and 4000:1 (Reyes) did. *See supra* at 1384.

17. The Government posits that "street dealers of narcotics make up in volume what they lack in quantity on each individual sale. Thus, the overall impact of their criminal activity is identical to someone who sells a larger amount on a single occasion." Appellant's Opening Brief at 16. The fact that Reyes would have to make 3752 sales to compete with the larger drug trafficker who suffers the same penalty as he, and that he would have to do this 3752 times to equal that dealer's one-time sale, makes the two defendants categorically different, especially in the context of the career offender provisions where the number of acts matters. The guidelines govern individual defendants and their acts, not the "overall" quantities of drugs in the economy.

gree of the discrepancies had not been adequately considered.

## B. Factual Findings

In accordance with *Lira–Barraza*'s three-part analysis we review the record for factual findings supporting departure. 941 F.2d at 746–47. "The district court may build the appropriate factual record by adopting a presentence report that has made specific findings of fact that support the decision to depart." *United States v. Singleton,* 917 F.2d 411, 412–13 (9th Cir.1990). The district court deemed Reyes a "comparatively minor offender" based on the "minor" nature of both his past and current offenses. The Government has not challenged the quantity-based descriptions of the underlying offenses as clearly erroneous factual findings. Therefore, "[t]he court's finding that these facts existed obviously met the clearly erroneous standard." *Lira–Barraza,* 941 F.2d at 747; *see also Valdez–Gonzalez,* 957 F.2d at 650 n. 5.

## C. Extent

■ A district court must "give adequate reasons for departure and for the extent of departure." *United States v. Faulkner,* 934 F.2d 190, 191 (9th Cir.1991). The same reason may justify both decisions. *See Ramirez Acosta,* 895 F.2d at 601–02 (both the reason to depart and extent of departure explained in terms of under-representation of the seriousness of defendant's criminal history). In explaining the extent of departure, the court may draw analogies to other parts of the guidelines or other offenses. *See Lira–Barraza,* 941 F.2d at 750–51 & n. 13. " 'Reversal is required only if the choice [of a departure sentence] is "unreasonable" in light of the standards and policies incorporated in the Act and the Guidelines.' " *Martinez–Gonzalez,* 962 F.2d at 876 (citing *Lira–Barraza,* 941 F.2d at 751); *see also* 18 U.S.C. § 3742(e)(4) (reviewing court must consider whether sentence is "plainly unreasonable.")

The Government argues that a wholesale departure from the career offender provisions, one that departs from both the criminal history category and the base offense level, constitutes an "unreasonable" departure. It suggests that in the context of Section 4A1.3 a downward departure from the career offender provisions may reasonably consist *only* of a departure from the criminal history category of a career offender, and *not* from the base offense level also assigned under these provisions to the career offender. These the Government argues must be retained. Otherwise a sentencing judge can, in the name of downward departure, "completely ignore" the career offender guideline provisions.

■ When a court determines that the career offender guidelines apply it must take two steps: (1) automatically assign the defendant a criminal history category of VI, and (2) recalculate the base offense level according to the length of the penalty for the conviction. U.S.S.G. 4B1.1. Unlike any other section of the guidelines, the career offender provisions set both sentencing parameters at once. A defendant sentenced under the career offender provisions is subjected to a significant "jump" in penalty precisely because both "steps"—a boost in the criminal history category and a boost in the base offense level—are taken at once.

The Government essentially suggests that the "one-jump-two-steps" application of the career offender guidelines in which both steps are inseparable at the time of application, becomes, *for the purposes of departure,* a "one-step" modification where one step (criminal history point reduction) is separable from the other (base offense level reduction). It thus advocates understanding career offender departures as consisting only of the criminal history "step."

The Government's support for its "one-step" analysis of career offender departures is very limited. It argues that the district court unreasonably departed because it failed to follow the text of Section 4A1.3. Section 4A1.3 has no particularized application to career offender departures. Nowhere does it specify or imply that career offender departures may consist *only* of downwards adjustments of criminal history categories. Under it "the Court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in

the same criminal history category" (when deciding whether to depart), "and therefore consider a downward departure from the guidelines," (how much and for what reason not predetermined). U.S.S.G. § 4A1.3. The provision does suggest that "the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category," but does not confine the court to this method of analogizing alone. *Id.* In the context of a departure from career offender guidelines, it cannot be read to preclude consideration of other analogies or departures from base offense levels.

■ The district court did not disregard the terms of Section 4A1.3 or go against precedent on departure [18] in viewing a departure from the career offender provisions as permissible even though it reduced the sentence more than a modification of only the criminal history category would warrant. Other courts have reasoned:

> The jump into the career offender category was made in one [overall increase] under U.S.S.G. § 4B1.1. The district court reversed that single [overall increase] when it reasonably determined ... that placing defendant in the career offender criminal history category significantly over-represented the seriousness of his criminal history.

*Bowser,* 941 F.2d 1019, 1026 (10th Cir.1991) (district court departed downward to original offense level and criminal history category computed prior to application of career of-

fender provisions). *See also, U.S. v. Senior,* 935 F.2d 149, 151 (8th Cir.1991) (same). However, in sentencing Reyes to the same punishment he would have received without reference to the career offender guidelines, the court did not provide an explanatory analogy. In different circumstances, we have analogized the career offender provisions to an "on/off switch." *United States v. Faulkner,* 934 F.2d 190, 196, *as amended,* 952 F.2d 1066, 1073 (9th Cir.1991). It may be that like the *Bowser* and *Senior* courts and other district courts in the Ninth and Seventh Circuits, the district court, to give proper weight to proportionality, found it necessary in effect to "switch off" the career offender provisions.[19] Because the court failed to articulate its reasons for the degree of its departure, we must remand. Since recidivism is the hallmark of a career offender, the district court may well need to consider the recidivist tendencies of the defendant. An analogy that results in a reduction of both history and base offense level would not be unreasonable.

## II. REFUSAL TO CONSENT TO WAIVER

On cross appeal defendant argues that the Court impermissibly allowed the Government to refuse to consent to the defendant's waiver of jury trial. He contends that the court was obligated to require an explanation from the Government for its refusal so to consent and to assure that the explanation was not tinged by racial discrimination.

---

**18.** The Government cites *United States v. Rodriguez–Castro,* 908 F.2d 438 (9th Cir.1990), for the proposition that § 4A1.3 departures can only involve departures from the assigned criminal history level and not the base offense level. This case does not involve a departure from the career offender guidelines and therefore provides no guide for or limitations upon such departures. In any event, it does not confine departures to reductions in the criminal history category, but simply requires that under § 4A1.3 *at least* this step be taken. *See also United States v. Ward,* 914 F.2d 1340, 1348 (9th Cir.1990) (departure outside the context of career offender guidelines based on § 4A1.3 must, at a minimum, provide analogy to different criminal history categories).

**19.** In *Lawrence* the district court apparently departed in the same manner. It imposed a sentence that would have been recommended if "calculated without using the career offender

enhancement." 916 F.2d 553, 554. Nevertheless, in affirming the district court's decision to depart we specifically noted that the Government did not challenge the application of the decision to depart from the guidelines. *Lawrence,* 916 F.2d at 555 n. 5. We note that in other jurisdictions the Government itself has endorsed departure in part on the basis of the very "minor nature of [a defendant's] previous convictions" and in the same manner as applied to Lawrence and Reyes. *United States v. Dean,* 908 F.2d 215, 216 (7th Cir.1990). The district court sentenced Dean, a "three time convicted drug offender, plead[ing] guilty to delivering 1.09 grams of LSD" and also subject to the career offender provisions to a six-year term, a sentence falling within the guideline range of 63–78 months applicable if sentenced without reference to the career offender provisions.

Although defendant had waived his right to a jury trial, the Government refused to consent to the waiver, and the jury trial commenced. Neither before nor during trial did Reyes argue that the court was obligated to require an explanation for the Government's refusal to consent to a bench trial.[20] Thus, he did not raise this particular issue before the district court.

■■■■ Ordinarily, an issue raised for the first time on appeal is not considered by this court. *United States v. Reyes–Alvarado*, 963 F.2d 1184, 1187 (9th Cir.1992); *United States v. Carlson*, 900 F.2d 1346, 1349 (9th Cir.1990); *Jovanovich v. United States*, 813 F.2d 1035, 1037 (9th Cir.1987); *Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir.1985). However:

> We have permitted only narrow and discretionary exceptions to the general rule against considering issues for the first time on appeal. They are (1) when review is necessary to prevent a miscarriage of justice or to preserve the integrity of the judicial process, (2) when a change in law raises a new issue while an appeal is pending, and (3) when the issue is purely one of law.

*Jovanovich*, 813 F.2d at 1037. Defendant raises an issue which challenges the integrity of the judicial process. We have previously stated that "because a claim that a district court violated a party's due process rights questions the integrity of the federal judicial system, we review [the defendant's] claim despite his failure to raise it below." *Prantil v. State of California*, 843 F.2d 314, 319 n. 5 (9th Cir.1988). Since this appeal raises primarily a question of law, failure to preserve the legal issue below should not foreclose consideration.

■■■■ Rule 23(a) of the Federal Rules of Criminal Procedure states that:

> [c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial in writing with the approval of the court *and the consent of the government.*

Fed.R.Crim.P. 23(a) (emphasis added). Though the Government does not have the constitutional right to insist on a jury trial, neither does a defendant have a Sixth Amendment right to waiver. *Singer v. United States*, 380 U.S. 24, 36–37, 85 S.Ct. 783, 790–91, 13 L.Ed.2d 630 (1965). The Supreme Court has upheld the constitutionality of Rule 23 and specifically considered whether the Government should be forced to provide reasons in exercising its power under it.

> Because of [our] confidence in the integrity of the federal prosecutor, Rule 23(a) does not require that the Government articulate its reasons for demanding a jury trial at the time it refuses to consent to a defendant's proffered waiver. Nor should we assume that federal prosecutors would demand a trial for an ignoble purpose. We need not determine in this case whether there might be circumstances where a defendant's reasons for wanting to be tried by a judge alone are so compelling that the Government's insistence on trial by jury would result in the denial to a defendant of an impartial trial.

*Singer*, 380 U.S. at 37, 85 S.Ct. at 791.

■■■■ Defendant's assertion that the requisite "circumstances" were present in his case has no merit. The "passion, prejudice ... and public feeling" defendant feared would jeopardize his right to an impartial trial, *Singer* at 38, 85 S.Ct. at 791, were specifically addressed and guarded against by the trial judge during voir dire.[21]

## CONCLUSION

We uphold the conviction and hold that the district court may depart from the career offender guidelines for the reason stated.

---

**20.** He did allege that the decision to prosecute was initiated due to bias against Hispanics and the district court specifically found no such prosecutorial abuse. (CR 39, 5–7)

**21.** Defendant's reliance on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), is wholly misplaced. *Batson* guaranteed the rights of potential jury members not to be peremptorily struck on the basis of constitutionally impermissible reasons. 476 U.S. at 87, 106 S.Ct. at 1718. *See also Powers v. Ohio*, 499 U.S. 400, 409–10, 111 S.Ct. 1364, 1370, 113 L.Ed.2d 411 (1991). It has no application to a defendant's waiver of a jury trial.

However, we remand for an explanation of the extent of its departure in light of the considerations set forth in this opinion.

**REMANDED.**

BRUNETTI, Circuit Judge, dissenting:

I concur with the majority's rejection of Reyes' challenge to the Government's refusal to consent to the waiver of a jury trial. However, I dissent from the majority's holding that the district court's grounds for departure from the career offender guidelines were authorized, because the majority both misstates the district court's rationale for departure and mischaracterizes the state of the law.

**I**

In reviewing the district court's downward departure, we "must consider the reasons for departure actually articulated by the sentencing court." *United States v. Montenegro–Rojo*, 908 F.2d 425, 427 (9th Cir.1990). During the sentencing hearing, the district court made several statements relevant to his decision to depart downward. The first occurred while the court was questioning the prosecutor about the Government's position on classifying Reyes as a career offender:

Well, let me ask you this, Mr. Gorder. If we convict every drug addict of minor sales that they make in order to sustain their habit, as this indicates to me is the fact, and we put them all in prison as career offenders, what's going to happen?

I mean, these drug addicts are going to sell to get enough money to pay. Don't we have to do something different than that on this drug thing? It's really very difficult[ ] for me to conceive that we're going to put comparatively minor offenders compared to the rest of the world into a career offender status and sentence them to prison as long as the Guidelines would indicate. I'm very concerned about that.

After the district court and the prosecutor discussed the Government's efforts to eradicate drug dealing in Portland, the district court stated

Well, let me say this. I commend the United States Attorney for his efforts and your staff for their efforts to help with this drug problem.

And I think an appropriate sentence should be meted out in this case. There's no question of defendant's guilt. I've found that he's not entitled to acceptance of responsibility. And I'm also satisfied that *the conviction in paragraph 34 [for possession for sale of marijuana] is cer-*tainly an appropriate conviction under the Guidelines for the purpose of career offender status.

I can't justify saying that the sale of marijuana is different than the distribution. But *it certainly was a rather minor offense,* as counsel points out, perhaps wouldn't have even been an offense here in Oregon. Also, *the two offenses in paragraphs 37 and 38 were sentenced as part of the same sentence.* [ . . .]

Sounds to me like maybe the defendant can appeal my inclusion of the sentence in paragraph 38, and the government can appeal *my departure downward based on the overrepresentation of the criminal history by those offenses.*

I am going to depart downward to the level 14 and the range of 33 to 41 months. I think in this case it's clear that *the previous criminal history seriously overrepresents the history from the standpoint of the Guidelines.* I can't conceive that the Guidelines didn't intend to give a judicial officer authority to depart downward under circumstances such as this. That being the case, I will depart.

(Emphasis added). In its written "Findings of Fact Order," filed three days after the sentencing hearing, the district court stated that it

finds downward departure is appropriate because sentencing defendant as a career offender seriously over-represents defendant's criminal history.

The district court provided no further explanation for its decision to depart.

**II**

A district court's explanation of its reason(s) for departing downward must meet the following standard:

The Sentencing Reform Act expressly provides that the sentencing court must state "the *specified reason for imposition of a sentence different from that described* [in the Guidelines]." This requirement is not satisfied by a general recitation that the defendant's criminal history category or offense level underrepresents, in the sentencing court's opinion, the defendant's criminal record or the seriousness of the charged offense. The district court must set forth the *specific aspects of the defendant's criminal history or of the charged offense* that the district court believes have not been adequately represented in the recommended sentence.

*United States v. Wells,* 878 F.2d 1232, 1233 (9th Cir.1989) (emphasis added). "[C]onclusory statement[s] by the district court" do not "permit meaningful appellate review of the district court's departure from the Guidelines." *Id.* at 1233. One problem with such cursory explanations for departure is that they may "amount[ ] to little more than an expression of personal disagreement with the Guidelines." *United States v. Thomas,* 961 F.2d 1110, 1118 (3d Cir.1992).

The district court's comments during its questioning of the prosecution at the sentencing hearing about the Government's drug-fighting efforts do not meet our standard because they do not explain why the district court found that sentencing Reyes as a career offender seriously overrepresented his criminal history. At best they amount only to "expressions of personal disagreement with the Guidelines." The district court seems to believe that long prison terms are not the best way to fight the war on drugs, as evinced by the statement "Don't we have to do something different than that on this drug thing?"

The district judge also seems to disagree with classifying "comparatively minor offenders" as career offenders. None of these statements satisfies the standard established in *Wells:* an explanation of the specific aspects of Reyes' criminal history that are overrepresented by career offender status. The only place where the district court seems to point to such aspects is immediately prior to announcing the departure down to level 14. The district court gives two reasons for its departure: the February 1987 conviction for possession for sale of marijuana was a "minor offense" [1] and the two 1989 convictions were consolidated for sentencing.[2] It is not entirely clear that the district judge based his finding of overrepresentation on these factors.

Even if reaching the merits of the case based on this record is warranted, we must consider the reasons actually advanced by the district court: consolidation of two of the prior offenses for sentencing and the fact that one of the prior offenses was "minor." It is these reasons that we must evaluate to determine if they permit the district court to depart downward because they are mitigating circumstances not adequately taken into account by the Sentencing Commission. 18 U.S.C. § 3553(b) (1988); U.S.S.G. § 5K2.0. *See United States v. Sanchez,* 933 F.2d 742, 745 (9th Cir.1991).

The consolidation for sentencing of the two separate and unrelated 1989 convictions does not render the criminal history any more "overrepresentative" than it would be otherwise; if anything, it makes it more *under* representative. As to the second circumstance, the district court's conclusion that the prior marijuana offense was "minor" probably related to the fact that it involved a small quantity of marijuana—only six baggies. Thus, the Government correctly states that "the record below suggests [that] the district court based its decision to depart downward on the *relatively* small amounts of cocaine and marijuana sold by the defendant." (Emphasis added).

---

1. Contrary to the majority's assertion, the district court never stated that "Reyes was guilty of *very* 'minor offense[s]'" (emphasis added).

2. Reyes argued to the district court that because the second 1989 conviction (Delivery of Controlled Substance II) was consolidated for sentencing with the first 1989 conviction (Possession of Controlled Substance I), it could not be used to establish Reyes' career offender status. The district court rejected this argument, but apparently used the fact of consolidation to support his decision to depart downward.

The majority, rather than simply considering "the reasons for departure actually articulated by the sentencing court," *Montenegro–Rojo,* 908 F.2d at 427, puts words into the district court's mouth. The majority first attributes its quantity disproportionality analysis [3] to the district court, when the district court undertook no such analysis.[4] The majority then concludes that

> [t]he question we address is not whether the [Sentencing Commission] took into consideration small amounts of drugs, but whether it adequately considered the disproportionate treatment of drug offenders sentenced to the same penalty range for offenses involving drug quantities of exceptionally different orders of magnitude. [...]

> In declaring that "comparatively minor offenders" should not receive the same "career offender status," the district court found the Commission's consideration of the relationship between drug quantity and penalty among differently-situated career offenders inadequate.

The problem with these statements is that the district court never made any such findings or gave anything close to this asserted rationale as a reason for downward departure. The majority opinion simply invents a justification out of whole cloth. It may well be that this is precisely the reason the district court had in mind but never articulated; however, it is our job to look at what the district court actually said, not to hypothesize what we would have said had we been in his shoes.

Even assuming *arguendo* that the district court's rationale for downward departure was the relatively small quantities of drugs involved in Reyes' prior offenses, we should vacate the judgment and remand for resentencing because this rationale is not a valid ground upon which to base a downward departure. The majority opinion correctly notes that both the Second and Sixth Circuits have held that the Sentencing Commission adequately took small quantities of drugs into account and have therefore rejected this rationale as a valid basis for downward departure. *See United States v. Richardson,* 923 F.2d 13, 17 (2d Cir.1991); *United States v. Hays,* 899 F.2d 515, 518–20 (6th Cir.), *cert. denied,* 498 U.S. 958, 111 S.Ct. 385, 112 L.Ed.2d 396 (1990). The majority opinion appears to agree with the rationale behind these holdings: [5]

> [U.S.S.G. § 4B1.1] is designed to increase significantly the term of incarceration for career offenders. Quantity is implicitly and, in our view, adequately considered in the computation of the base offense level. Furthermore, a sentencing court has discretion to give additional consideration to drug quantity when determining where in the applicable range a violator should be sentenced.

*Richardson,* 923 F.2d at 16.[6] I agree with that rationale.

This case was never argued as an Eighth Amendment challenge to the Sentencing Guidelines career offender provision nor was it ever argued as a sentence proportionality

---

**3.** The part of the opinion stating that "[u]nder the career offender guidelines a defendant convicted for [selling] a fraction of one gram of cocaine is accorded the harshest punishment due an offender trafficking in up to 500 grams."

**4.** The majority similarly states that the district court used this imaginary comparative quantity analysis "as the means to compare the similar treatment of defendants whose offenses differ by exceptional orders of magnitude," when no such comparison was ever undertaken by the district court.

**5.** The majority states that "we agree that the Commission did take into account varying penalties linked to different drug quantities."

**6.** In fact, the holding of *Richardson* probably extends to prohibit downward departures based on a disproportionality analysis similar to the one conducted by the majority. *See United States v. Moore,* 968 F.2d 216, 226 n. 4 (2d Cir.) (applying *Richardson* to a district court's downward departure based in part on the district court's view that he "had heard of cases involving tens of thousands of pounds of marijuana where the sentences were not so severe as thirty years and that 'this case is of no comparison with them.' "), *cert. denied,* ——— U.S. ———, 113 S.Ct. 480, 121 L.Ed.2d 385 (1992). *See also, Richardson,* 923 F.2d at 17 (Restani, J., concurring) ("application of the career offender provision of the Guidelines in certain cases may be overly harsh").

case[7], however, the majority identifies a question of first impression never addressed or considered by the parties or the district court and converts this case from a classic "small quantity" drug sentencing case controlled by the rationale of *Richardson* and *Hays* to a proportionality case. With no support in the record, the majority states that "a downward departure was warranted, *in effect,* because of the lack of proportionality"; and makes a proportionality argument for the district court which was never suggested by counsel or considered by the judge. The majority further converts the district judge's simple "addict minor drug sales" stated basis for departure into a complex proportionate treatment analysis complete with a volume and quantity analysis found no where in the record. The opinion then makes a conclusion never considered or anticipated by the district court, namely, that the court was authorized to depart because while the Sentencing Commission did take into accord varying penalties linked to different drug quantities, the sentencing ranges resulting in exceptional discrepancies were not adequately considered.

### III

The majority has caused another problem by creating a basis for departure to support the district court's lack of explanation for the extent of its downward departure. The majority correctly notes that a district court must "give adequate reasons for ... the extent of departure," *United States v. Faulkner,* 934 F.2d 190, 196, *as amended,* 952 F.2d 1066, 1073 (9th Cir.1991), and that in doing so the court may draw analogies to other parts of the guidelines or other offenses. *See United States v. Lira–Barraza,* 941 F.2d 745, 746–47 (9th Cir.1991). The district provided no explanation, by analogy or otherwise, and therefore, as the majority correctly holds, we must remand for such an explana-

tion. However, the majority does not stop there; it discusses at length why "[a]n analogy that results in reduction of both [criminal] history and base offense level would not be unreasonable." This *dictum* is unnecessary to the central holding that we need to remand, and preemptively decides an issue not yet before us. Until the district court puts the issue squarely before us, we should not reach out and decide it.

I would vacate the judgment and remand for resentencing within the applicable career offender guidelines range in accordance with the rationale of *Richardson.*

---

7. Reyes' counsel argued that "the career offender guidelines seriously overrepresent both [Reyes] criminal history and the actions in this case and that the combination of the factors in this case would constitute grounds for departure." She supported that assertion with the arguments that "Mr. Reyes's criminal history shows always very small amounts of controlled substances," that the predicate marijuana conviction was a "simple

possession case," that Reyes was an addict and has received no treatment, and that his prior and current convictions "involve extremely small amounts of controlled substances." She finally states "and it's that combination of all those factors which we believe gives the court grounds for departing from the career offender guidelines." (See ER pp. 17–18).