**UNITED STATES of America**

v.

**WHYTE, Easton A. a/k/a Whyte, Larry, Appellant.**

**No. 89–1154.**

United States Court of Appeals, Third Circuit.

Argued July 12, 1989.

Decided Dec. 29, 1989.

See also, D.C., 694 F.Supp. 1194.

Michael M. Baylson, U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, John C. Dodds (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Steven A. Morley (argued), Philadelphia, Pa., for appellant.

Before HIGGINBOTHAM, BECKER and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

Appellant Easton Whyte was sentenced to a term of 30 years' imprisonment for a narcotics violation under the career offender provision of the U.S. Sentencing Guidelines, which applies to three-time drug offenders. A mandatory five-year enhancement for carrying a weapon during a drug trafficking crime increased Whyte's total sentence to 35 years. Because Whyte was rendered a career offender on account of two prior misdemeanor convictions in state court for sales of small amounts of marijuana, he argues that the application of this guideline seriously overrepresents the na-

ture of his past criminal behavior. Therefore, Whyte contends, the district court committed reversible error in refusing to depart from the applicable guideline range.

This court has recently held that a district court's discretionary refusal to depart is not appealable. *See United States v. Denardi*, 892 F.2d 269 (3d Cir.1989). We conclude that this case is controlled by *Denardi*. Accordingly, to the extent that Whyte claims error in the district court's refusal to depart, we will dismiss his appeal. Whyte contends further that the Sentencing Commission lacked authority to write the career offender guideline as broadly as it did, that the sentence imposed on him violates the eighth amendment, and that the district court erroneously instructed the jury. Because we find these contentions to be without merit, we will affirm.

## I.

On December 28, 1987, two Philadelphia police officers observed appellant Easton Whyte in a car holding a bag of white powder they thought to be cocaine. Whyte attempted to speed away, and a chase ensued. Whyte eventually slammed his car into several parked cars, and the police cruiser in turn crashed into Whyte's car. One officer then pursued Whyte on foot. As he pulled Whyte down from a fence Whyte was attempting to scale, Whyte turned and pointed a loaded .45 caliber semi-automatic handgun at the officer. The officer knocked it away with his police radio, a wrestling match ensued, and Whyte was eventually restrained by the officer and his partner. Whyte was found to be carrying about 41 grams of crack and 10 grams of regular cocaine, with a street value of about $3710 and $680 respectively.

Whyte was convicted of possession of cocaine with intent to distribute,[1] possession of a firearm during a drug trafficking crime,[2] and possession of a firearm by a former felon.[3] Because Whyte had been convicted for drug offenses twice previously, the district court applied the career of-

---

1. *See* 21 U.S.C. § 841 (1982).

2. *See* 18 U.S.C.A. § 924(c) (Supp.1989).

3. *See id.* § 922(g)(1).

fender guideline, section 4B1.1, in calculating the sentence for Whyte's drug offense. But for the application of that provision, the guidelines would have provided for a sentence between 121 and 151 months for the drug conviction; as a career offender, however, Whyte faced a sentencing range of 30 years to life.[4] He also received a mandatory five-year sentence enhancement for carrying a gun during a drug trafficking crime, bringing his total sentence up to 35 years.[5]

Application of the career offender provision was founded upon the following two predicate offenses:

(1) On August 20, 1984, Whyte was convicted in the Philadelphia Court of Common Pleas of selling $10.00 of marijuana to a police officer. He was fined $200 and ordered to pay $275 court costs.

(2) On April 27, 1987, he was convicted in the same court of possessing "1500 doses" and "200 plastic packets" of marijuana with intent to distribute them.[6] He was fined $1000 and ordered to pay $75 court costs.

■ Neither side disputes that the career offender guideline, on its own terms, applies to this case. It provides, in relevant part, that an adult who commits a controlled substance offense is a career offender if he "has at least two prior felony convictions of . . . a controlled substance offense."[7] The guidelines define these terms more precisely. A " '[p]rior felony conviction' means a prior adult federal *or state* conviction for an offense punishable by . . . a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed." *Id.* § 4B1.2 application note 3 (emphasis added). A "controlled substance offense" is any offense "identified in 21 U.S.C. §§ 841, 845b, 856, 952(a), 955, 959; *and similar offenses.*" *Id.* § 4B1.2(2) (Oct.1988 ed.) (emphasis added).[8] 21 U.S.C. § 841(a)(1) crimi-

---

**4.** Before application of the career offender provision, Whyte's offense level for possessing between 35 and 49 grams of cocaine base stood at 30. *See* Guidelines § 2D1.1(a)(3). His criminal history was Category III, yielding a sentencing range of between 121 and 151 months. *See id.* Ch. 5, part A. Application of the career offender provision, however, raised Whyte's offense level to 37 and his criminal history to Category VI, yielding a sentencing range of 360 months to life. *See id.* § 4B1.1, Ch. 5, part A.

**5.** *See* 18 U.S.C.A. § 924(c) (Supp.1989); Guidelines § 2K2.4. Whyte's other weapons conviction was grouped with his drug conviction and therefore ran concurrently with it. *See id.* §§ 2K2.1, 3D1.2(c), 3D1.3(a).

**6.** Nothing in the record indicates either the amount or the weight of the marijuana that Whyte sold on this occasion. For purposes of this appeal, we may assume this offense to be minor, at least as drug offenses go. We shall describe Whyte's various offenses with as much specificity as possible. Although the record contains less detail in this regard than is ideal, we find it more than sufficient to support the sentence imposed.

**7.** The career offender guideline provides:
A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.

| Offense Statutory Maximum | Offense Level |
|---|---|
| (A) Life | 37 |
| (B) 25 years or more | 34 |
| (C) 20 years or more, but less than 25 years | 32 |
| (D) 15 years or more, but less than 20 years | 29 |
| (E) 10 years or more, but less than 15 years | 24 |
| (F) 5 years or more, but less than 10 years | 17 |
| (G) More than 1 year, but less than 5 years | 12 |

Guidelines § 4B1.1.

**8.** Effective November 1, 1989, the Sentencing Commission changed the definition of a "controlled substance offense" slightly. For defendants sentenced after that date, a "controlled substance offense" is

an offense under a federal or state law prohibiting the manufacture, import, export, or distribution of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, or distribute.

nalizes possession with intent to distribute a controlled substance, and the analogous Pennsylvania statute provides for imprisonment of up to five years, *see* Pa.Stat.Ann. tit. 35, § 780–113(a)(30), –113(f)(2) (Purdon 1977 & Supp.1989). Thus Whyte's predicate offenses, although designated "misdemeanors" under Pennsylvania law, clearly constitute "prior felony conviction[s]" of "controlled substance offense[s]" for purposes of the career offender guideline.

Whyte's record in the Philadelphia Court of Common Pleas also includes the following:

(3) On March 1, 1983, he pled nolo contendere to manufacturing and possessing a controlled substance with intent to distribute. He received six months of reporting probation and six months of non-reporting probation, and was ordered to pay $60 court costs.

(4) On April 1, 1985, he was convicted of carrying a firearm without a license and on a public street. He received one year of probation.

(5) On February 19, 1987, he pled guilty to possessing a controlled substance. He received a $25 fine and was ordered to pay $50 court costs.

(6) On September 19, 1986, he was arrested and charged with conspiracy and possession of a controlled substance with intent to deliver. The charge involves "21 packets" of cocaine and "36 packets" of marijuana. The case is pending.

Whyte argued strenuously at his sentencing hearing that a downward departure from the guidelines was appropriate under the circumstances. The district court, however, refused to depart downward:

> On the issue of downward adjustment, I cannot conscientiously find a likelihood that the defendant will not commit further crimes. I believe that based on his past history that he's a professional drug dealer and if he were given a sentence of a short period of incarceration, he would resume drug dealing on the streets. From his past record also I think he would carry a weapon as part of whatever needs arise from dealing drugs on the street. . . .
>
> . . . .
>
> I cannot conscientiously say that the defendant's criminal history was significantly less than that of most defendants in the same criminal history category. The record is therefore insufficient to justify a downward departure from the guidelines.

App. at 271–72.[9]

Whyte raises four issues in appealing his thirty-five year sentence. First, he argues that the career offender guideline is invalid as applied because in writing it to cover this case, the Sentencing Commission exceeded the scope of its delegated authority. Second, he argues that the court erred in refusing to depart downward from the sentencing range applicable to Whyte once he had been classified as a career offender. Third, he argues that his sentence violates the eighth amendment, which prohibits sentences grossly disproportionate to the crime committed. Finally, he argues that the district court erred in instructing the jury that possession with intent to distribute is a "drug trafficking crime" for pur-

Guidelines § 4B1.2(2) (Nov.1989 ed.).

**9.** The government urged the court to consider that Whyte drew his gun and attempted to shoot the officer pursuing him. A ballistics expert testified that Whyte's pulling the trigger (and the gun's misfiring) would explain both the indentation found in the firing pin and the click that the officer heard before he knocked the gun away. However, the expert identified other scenarios as well that could account for both the click and the indentation. Because of his inconclusive testimony, we will not assume that Whyte attempted to pull the trigger; at the very least, however, the record makes clear that Whyte drew the weapon and pointed it at the officer as the officer was pulling him down from the fence. *See* App. at 72, 85. Without expressly finding whether Whyte tried to pull the trigger, the district court noted that the guideline range was "severe [enough] that it takes into account any appropriate considerations that flow from" the aggravating factors emphasized by the government. *Id.* at 271. On appeal, Whyte challenges neither the adequacy of the district court's findings regarding disputed facts, *see* Fed.R.Crim.P. 32(c)(3)(D), nor the court's statement of reasons for sentence, *see* 18 U.S.C. § 3553(c) (Supp.1987).

**1174**

poses of the weapons punishment enhancement statute, 18 U.S.C.A. § 924(c). We consider each of these contentions in turn.

## II.

■ Whyte seeks to preclude application of section 4B1.1, the career offender guideline, by arguing that the Sentencing Commission had no authority to write that guideline as broadly as it did.[10] Section 4B1.1 implements 28 U.S.C. § 994(h), which provides in pertinent part that "[t]he Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized [by statute] for categories of defendants in which the defendant ... (2) has previously been convicted of two or more prior felonies, each of which is ... (B) an offense described in [21 U.S.C. §§ 841, 952(a), 955, or 959]." Whyte claims that section 994(h)(2)(B) allows only convictions obtained under those precise federal statutes—not convictions obtained under similar or analogous state statutes—to serve as predicate offenses for career offender status.

We believe that the entire guideline is authorized, if not required, by section 994(h). The text of that statute, although not completely unambiguous, cuts against Whyte's position. If Congress had wanted only convictions under particular federal statutes to serve as predicate offenses, it could have said so quite simply. Instead, Congress referred to "offenses described in"—not "convictions obtained under"—those statutes. As the government notes, this language suggests that the predicate drug convictions need not be federal themselves, but only "be for conduct [that] could have been charged federally." Appellee's Br. at 13.

Moreover, the government's reading, more so than Whyte's, effectuates the purpose of section 994(h)—to impose "substan-

tial prison terms" on "repeat drug traffickers." S.Rep. No. 225, 98th Cong., 2d Sess. 175, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3358. Whyte is a repeat drug trafficker, at least in the sense that each of his predicate drug offenses, despite their relatively modest degree of seriousness, could have been prosecuted under 21 U.S.C. § 841. Had they been, Whyte would now unquestionably be characterized as a career offender, and we can discern no sensible reason why Congress would view Whyte's conduct with any less opprobrium because of the fortuity (at least from Whyte's point of view) that he was prosecuted under analogous state statutes instead.[11]

## III.

■ Whyte argues next that the district court erred in refusing to depart downward from the applicable guideline range. The statute governing the appealability of federal sentences by convicted defendants provides that

[a] defendant may file notice of appeal in the district court for review of an otherwise final sentence if the sentence—

(1) was imposed in violation of law; or

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is greater than the sentence specified in the applicable guideline range ...; or

(4) was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable.

18 U.S.C. § 3742(a) (Supp.1987). In order to fit his sentence within one of the four prongs under which section 3742(a) permits appellate review, Whyte attempts to characterize the district court's refusal to depart as either a violation of 18 U.S.C.

**10.** We clearly have appellate jurisdiction over this claim by virtue of 18 U.S.C. § 3742(a)(1).

**11.** Even if the career offender guideline were not authorized by section 994(h), Whyte's argu-

ment could succeed only if no *other* statutory provision authorized the Sentencing Commission to write that guideline as it did. In view of the discussion above, we need not reach this issue.

§ 3553(a),[12] a violation of 18 U.S.C. § 3553(b),[13] or an incorrect application of the guidelines' departure provisions. The argument that a refusal to depart might amount to any of these, however, was foreclosed by *United States v. Denardi*, 892 F.2d 269 (3d Cir.1989), which held that discretionary refusals to depart are not appealable.[14] Accordingly, we conclude that we lack appellate jurisdiction to review Whyte's claim that the district court erred in refusing to depart from the applicable guideline range.

## IV.

■ Whyte argues that his sentence violates the eighth amendment, interpreted in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), to prohibit sentences grossly disproportionate to the crime committed.

*Solem* set out the analytical framework for evaluating proportionality challenges, under which a court looks to three considerations: (1) "the gravity of the offense and the harshness of the penalty"; (2) "the sentences imposed on other criminals in the same jurisdiction"; and (3) "the sentences imposed for commission of the same crime in other jurisdictions." *Id.* at 290–92, 103 S.Ct. at 3009–11. *Solem* thus rejected the notion set out in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), that eighth amendment inquiries into proportionality are too complicated and subjective for courts to undertake outside the context of capital punishment. However, *Solem* expressly reaffirmed *Rummel*'s command that legislative determinations of the relative severity of various crimes be given substantial deference. *See Solem*, 463 U.S. at 289–90 & n. 16, 103 S.Ct. at 3009–10 & n. 16. Moreover, *Solem* expressly reaffirmed *Rummel* on its facts. *See id.* at 288 n. 13, 103 S.Ct. at 3008 n. 13.

*Rummel* had upheld a Texas recidivist statute mandating a life sentence after a third felony conviction as applied to someone whose criminal activity consisted of stealing items worth $80 through the fraudulent use of a credit card, passing a forged check for $28.36, and obtaining $120.75 by false pretenses. *See* 445 U.S. at 265–66, 100 S.Ct. at 1134–35.[15] *Solem* itself struck down the application of a recidivist statute mandating a life sentence without parole for someone with a series of relatively minor prior felony convictions, distinguishing *Rummel* on the ground that the life sentence in *Rummel* carried with it a realistic possibility of parole (though only after twelve years). *See* 463 U.S. at 297, 103 S.Ct. at 3013.

Although *Solem* thus structures the proportionality analysis, *Rummel*, we believe, provides the most useful point of reference in determining the result of that analysis on the facts before us. Rummel himself

---

**12.** Section 3553(a) provides, in pertinent part, that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection [namely punishment, deterrence, incapacitation, and rehabilitation]."

**13.** Section 3553(b) provides:
The court shall impose a sentence of the kind, and within the range, referred to in [the guidelines] unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

**14.** Discretionary refusals to depart—cases in which a district court concludes that departure is inappropriate even if not prohibited by section 3553(b)—must be distinguished from cases involving a claim that the district court refused to depart because it concluded that section 3553(b) prohibited departure. Only the former kind of cases are controlled by *Denardi*. The latter kind are appealable. *See United States v. Cheape*, 889 F.2d 477 (3d Cir.1989) (reviewing such a claim under subsection 3742(a)(1)); *United States v. Medeiros*, 884 F.2d 75 (3d Cir. 1989) (reviewing such a claim under subsection 3742(a)(2)).

**15.** *Solem* also left undisturbed the holding of *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam), the only proportionality case the Court decided between *Rummel* and *Solem*. *Hutto* had upheld a sentence of 40 years in jail and a $20,000 fine imposed on someone convicted in state court of possessing with intent to distribute nine ounces of marijuana. *See id.* at 370–72, 102 S.Ct. at 703–04.

received a life sentence after having been convicted of three thefts involving a grand total of $229.11. Whyte, by contrast, stands to get 35 years where his third offense alone involved almost $4000 worth of crack and pulling a loaded semi-automatic on a uniformed police officer. If the former sentence is constitutional, then without question, so too is the latter.[16]

### V.

■ In addition to the drug conviction, Whyte was also convicted of carrying a firearm during a drug trafficking crime pursuant to 18 U.S.C.A. § 924(c)(1) (Supp. 1989). The version of that statute in force at the time of Whyte's offenses defined "drug trafficking crime" as "any felony violation of Federal law *involving the distribution* ... of any controlled substance." 18 U.S.C. § 924(c)(2) (Supp.1987) (emphasis added). Whyte contends that the district court erroneously instructed the jury that possession with intent to distribute is a "drug trafficking crime" for purposes of section 924(c). His position, therefore, entails the dubious proposition that possessing cocaine with intent to distribute it does not "involv[e] the distribution" of that cocaine.

Two other circuits have squarely considered—and summarily rejected—Whyte's argument. *See United States v. Matra,* 841 F.2d 837, 843 (8th Cir.1988); *United States v. James,* 834 F.2d 92, 92–93 (4th Cir.1987). Moreover, this court in other contexts has construed the "involv[ing] distribution" language of section 924(c)(2) expansively. *See, e.g., United States v.*

*Torres,* 862 F.2d 1025, 1030–31 (3d Cir. 1988) (holding that conspiring to distribute a controlled substance "involv[es] the distribution" of that substance). It may be, as Whyte points out, that we must construe ambiguous criminal statutes against the government, but we find no ambiguity in whether possession of cocaine with intent to distribute it "involv[es] the distribution" of that cocaine. We therefore conclude that possession with intent to distribute a controlled substance is a "drug trafficking crime" as defined in the old version of section 924(c)(2),[17] and we reject Whyte's argument to the contrary.

### VI.

We have concluded that we are without jurisdiction to review Whyte's claim that the district court erred in refusing to depart from the guidelines. We have reviewed Whyte's other claims and found each of them to be without merit. Insofar as Whyte appeals from the district court's refusal to make a downward departure, the appeal will be dismissed. In all other respects the judgment of the district court will be affirmed.

---

16. Our analysis has focused primarily on the first *Solem* factor. We see no need, however, to undertake an extended survey of various states' recidivist statutes or drug enforcement penalties, for "[w]e agree with the Fourth and Fifth Circuits that apart from *Solem*'s particular factual context—a life sentence without the possibility of parole—an abbreviated proportionality review following the *Solem* guidelines satisfies eighth amendment demands." *United States v. Rosenberg,* 806 F.2d 1169, 1175 (3d Cir.1986), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1987).

17. Congress has since amended section 924(c) so as to remove the putative ambiguity that

Whyte seeks to exploit. *See* Pub.L. No. 100–690, § 6212, 102 Stat. 4181, 4360 (1988). The present version of the statute defines "drug trafficking crime" in part as "any felony punishable under the Controlled Substances Act." *See* 18 U.S.C.A. § 924(c)(2) (Supp.1989). The Controlled Substances Act, 21 U.S.C. § 801 *et seq.,* criminalizes possession with intent to distribute a controlled substance, *see id.* § 841(a)(1), so Whyte unquestionably would have committed a "drug trafficking crime" under the present version of the statute. We rest our conclusion solely on our interpretation of the definition of "drug trafficking crime" in the old version of the statute, however.