**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
       *Plaintiff-Appellee*,

v.

MATTHEW STEWART,
       *Defendant-Appellant*.

No. 13-10048

D.C. No.
2:10-cr-00564-
LDG-VCF-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted
March 11, 2014—San Francisco, California

Filed July 31, 2014

Before: Sidney R. Thomas, Raymond C. Fisher
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher

## SUMMARY[*]

### Criminal Law

Affirming a sentence for distributing a controlled substance, the panel reaffirmed this court's holding that because 18 U.S.C. § 944(h) does not limit career offender status under the Sentencing Guidelines to defendants with two predicate federal convictions, the Sentencing Commission did not exceed the scope of its delegated authority by including prior state convictions as an additional basis for career offender status.

The panel also held that the district court was mistaken about the impact of the purity of the controlled substance, but that the defendant's sentence was nonetheless reasonable under the totality of the circumstances.

### COUNSEL

Jeremy M. Delicino, Salt Lake City, Utah, for Defendant-Appellant.

Peter S. Levitt (argued), Assistant United States Attorney, Elizabeth O. White, Appellate Chief, Daniel G. Bogden, United States Attorney, Las Vegas, Nevada, for Plaintiff-Appellee.

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

FISHER, Circuit Judge:

Matthew Stewart pled guilty to two counts of distributing a controlled substance in violation of 21 U.S.C. § 841(a)(1). Because he had two prior state felony convictions for controlled substance offenses, the district court sentenced him as a career offender. *See* United States Sentencing Guidelines Manual (U.S.S.G.) §§ 4B1.1, 4B1.2. Stewart appeals his sentence, arguing that the Sentencing Commission exceeded its statutory authority under 28 U.S.C. § 994(h) by including state convictions as predicate offenses for purposes of defining a career offender. He further contends his sentence is substantively unreasonable because of the very low purity of the controlled substance he sold and the career offender guidelines' over-representation of his criminal history. We once again hold that the Commission's career offender guidelines are a permissible interpretation of the relevant statutes. *See United States v. Rivera*, 996 F.2d 993, 994–97 (9th Cir. 1993). We further conclude that the district court was mistaken about the impact of the purity of the controlled substance, but that Stewart's sentence was nonetheless reasonable under the totality of the circumstances. We therefore affirm.

## I

In July 2010, federal Drug Enforcement Agency (DEA) officers learned from a confidential source that Stewart was potentially a "gallon producer" and distributor of gamma-hydroxybutyric acid (GHB). Acting on this tip, the DEA initiated a series of controlled buys of GHB from Stewart. On three separate occasions over the next several months,

Stewart sold water bottles – each containing a detectable amount of GHB dissolved in water – to an undercover officer: a single water bottle for $160; eight water bottles for $1,700; and 16 water bottles containing approximately two gallons of total liquid for an unknown price. Agents arrested Stewart and conducted a search of his residence, where they seized additional water bottles containing liquid with a detectable amount of GHB. Laboratory testing on all of the seized bottles confirmed the presence of GHB in 11,359 milliliters of total liquid, or about three gallons.

Stewart pled guilty to two counts of distributing a controlled substance under 21 U.S.C § 841(a)(1). Absent application of the career offender guidelines, Stewart would have had a criminal history category of III. But because Stewart had two prior state felony convictions for drug distribution, he qualified as a career offender with an automatic criminal history category of VI. *See* U.S.S.G. § 4B1.1(a)–(b). Stewart's first conviction was for the sale of ecstasy tablets in 2002, and his second was for the sale of cocaine in 2005. Based on the 20-year statutory maximum term of imprisonment for the offense to which Stewart pled guilty, 21 U.S.C. § 841(b)(1)(C), the career offender guidelines reset Stewart's offense level to 32, *see* U.S.S.G. § 4B1.1(b)(3). Applying a criminal history category of VI and a three-level downward adjustment for acceptance of responsibility, the district court calculated a guidelines range of 151 to 188 months of imprisonment. Although the district court found that a sentence within this range would be appropriate, it nonetheless sentenced Stewart to 120 months' imprisonment. Stewart timely appealed his sentence.

## II

The Sentencing Commission's authority for the career offender guidelines rests on 28 U.S.C. § 994. Section 994(h) directs the Commission to "assure" that the guidelines specify a sentence "at or near" the statutory maximum for a defendant who: (1) has been convicted of a crime of violence or a controlled substance offense; and (2) has two or more prior felony convictions, each of which is a crime of violence or a controlled substance offense. *See* 28 U.S.C. § 994(h).

Carrying out this mandate, the Commission promulgated the career offender guidelines, which categorize an adult defendant as a "career offender" when the defendant (1) is convicted of "a felony that is either a crime of violence or a controlled substance offense" and (2) "has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a); *see also United States v. Mitchell*, 624 F.3d 1023, 1026 (9th Cir. 2010). The guidelines define a "controlled substance offense" as "an offense under federal or state law" that "prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance," or possession of a controlled substance with the intent to do the same. U.S.S.G. § 4B1.2(b).

Stewart acknowledges that he was properly categorized as a career offender under the guidelines, based on his federal conviction for distributing GHB and his two prior state drug distribution convictions. *See* U.S.S.G. §§ 4B1.1, 4B1.2. He argues, however, that the career offender guidelines are invalid because they conflict with the plain language of § 994(h), which he interprets as requiring a guidelines sentence at or near the statutory maximum only for

defendants with two prior *federal*, not state, drug trafficking convictions. His argument relies on the language of § 994(h), which specifies career offender treatment only for a defendant who has two or more previous convictions for a controlled substance offense "described in" certain federal controlled substances statutes:

> The Commission shall assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized for categories of defendants in which the defendant is eighteen years old or older and –
>
> (1) has been convicted of a felony that is –
>
> > (A) a crime of violence; or
> >
> > (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46; and
>
> (2) has previously been convicted of two or more prior felonies, each of which is –
>
> > (A) a crime of violence; or
> >
> > (B) an offense described in section 401 of the Controlled Substances Act (21 U.S.C. 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and

Export Act (21 U.S.C. 952(a), 955, and 959), and chapter 705 of title 46.

28 U.S.C. § 994(h). On the strength of this language, Stewart argues that the Commission exceeded its authority when it adopted guidelines imposing career offender status for previous *state* controlled substance convictions.

We rejected this very argument in *United States v. Rivera*, 996 F.2d 993, 994–97 (9th Cir. 1993), and we now reaffirm *Rivera*'s continuing validity. In *Rivera*, we held that the guidelines were a "sufficiently reasonable" interpretation of the ambiguous language of § 994(h), because this section is not limited to predicate offenses under federal law but extends to conduct involving controlled substances that could have been charged federally. *See id.* We further noted that the career offender guidelines were consistent with Congress' intent to punish repeat drug traffickers regardless of whether their predicate convictions were state or federal. *See id.* at 996.

Stewart argues that *Rivera* cannot be reconciled with the Supreme Court's subsequent decision in *United States v. LaBonte*, 520 U.S. 751 (1997), because *Rivera* applied an erroneous standard of review. We do not agree that *LaBonte* undermines *Rivera*'s holding. *LaBonte* held that the Commission's definition of "offense statutory maximum" in § 4B1.1 was invalid because it was "at odds with the plain language" and "ordinary meaning" of 28 U.S.C. § 994(h). 520 U.S. at 756, 757 (quoting *Moskal v. United States*, 498 U.S. 103, 108 (1990)) (internal quotation marks omitted). The Court noted that "Congress has delegated to the Commission 'significant discretion in formulating'" the sentencing guidelines, but the Commission's promulgations

must nonetheless "bow to the specific directives of Congress." *Id.* at 757 (quoting *Mistretta v. United States*, 488 U.S. 361, 377 (1989)); *see also United States v. Tercero*, 734 F.3d 979, 982 (9th Cir. 2013) (explaining that *LaBonte* invalidated a guidelines provision as being "in direct conflict" with the authorizing statute).

Admittedly, we applied a different standard of review in *Rivera*, asking "whether the Sentencing Guideline [was] 'sufficiently reasonable' in light of the congressional directive to the Commission," 996 F.2d at 994, rather than whether there was a direct conflict with the statute. Nevertheless, our inquiry was consistent with the analysis applied in *LaBonte* because a guideline that constitutes a "sufficiently reasonable" interpretation of the enabling statute cannot be in direct conflict with the statute's plain mandate.

In *Rivera*, we first found § 994(h) to be ambiguous, because "it is not at all clear that Congress intended to *exclude* state [controlled substance] convictions" as predicate offenses triggering career offender status. 996 F.2d at 995–96. Only then did we conclude that the Commission's interpretation was a sufficiently reasonable implementation of congressional intent. *See id*. Although § 994(h) could be interpreted as Stewart prefers – that career offender status does not depend on prior state felony convictions – there is no direct conflict between the Commission's contrary interpretation and section 994(h)'s plain language. *See id.* at 995; *see also United States v. Beasley*, 12 F.3d 280, 283 (1st Cir. 1993) (holding that a "literal reading" of this section supports the Commission's interpretation); *United States v. Whyte*, 892 F.2d 1170, 1174 (3d Cir. 1989) (holding that the Commission's interpretation "is authorized, if not required, by section 994(h)"). Because *Rivera* is not "clearly

irreconcilable with the reasoning or theory" of *LaBonte*, we remain bound by its holding. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).[1]

Even if we were free to reconsider *Rivera*, we would reach the same result. As we explained there, "the language of § 994(h) suggests that the predicate drug convictions need not be federal as long as they are for conduct that could have been charged federally." 996 F.2d at 996 (citing *Whyte*, 892 F.2d at 1174). We reasoned that:

> Section 994(h)(2)(B) provides that offenses "described in" the federal statutes listed in that subsection serve as predicates for career offender status. If Congress had intended only federal offenses to serve as predicates for career offender status, it could have done so by providing that only "convictions obtained under" the federal statutes would be the basis for career offender status. The fact that Congress used the words "described in" indicates the focus is not upon whether the predicate offense is federal or state; rather, the focus is upon the type of conduct involved.

---

[1] Since *LaBonte*, we have consistently upheld the sentences of defendants who were classified as career offenders based on their prior convictions for state felony controlled substance offenses, without commenting on the validity of the guidelines. *See, e.g.*, *United States v. Lee*, 704 F.3d 785, 788–92 (9th Cir. 2012); *Mitchell*, 624 F.3d at 1027; *United States v. Charles*, 581 F.3d 927, 934 (9th Cir. 2009); *United States v. Crawford*, 520 F.3d 1072, 1077–80 (9th Cir. 2008); *United States v. Sandoval-Venegas*, 292 F.3d 1101, 1106–07 (9th Cir. 2002). This consistent enforcement of the guidelines is a further indication that *LaBonte* did not disturb our holding in *Rivera*.

*Id.*[2]   Thus, the career offender guidelines, which include controlled substance offenses under both federal and state law as qualifying predicate offenses, are "consistent with the *type* of conduct Congress intended to penalize" in § 994(h).   *Id.* (emphasis added).   Every other circuit to consider this question agrees.  *See United States v. Jemine*, 555 F. App'x 624, 625 (7th Cir. 2014); *United States v. Najar*, 225 F.3d 660, 2000 WL 799331, at *3 (6th Cir. 2000) (unpublished table decision); *United States v. Gonsalves*, 121 F.3d 1416, 1417–19 (11th Cir. 1997); *United States v. Brown*, 23 F.3d 839, 840–41 (4th Cir. 1994), *abrogated on other grounds by Koon v. United States*, 518 U.S. 81 (1996); *United States v. Consuegra*, 22 F.3d 788, 789–90 (8th Cir. 1994); *Beasley*, 12 F.3d at 282–84; *Whyte*, 892 F.2d at 1174.

Our post-*Rivera* decision in *United States v. Heim*, 15 F.3d 830 (9th Cir. 1994), offers a further reason for rejecting Stewart's challenge.  We stated there that Congress did not intend § 994(h) to establish "an exhaustive list . . . of [the] types of cases in which terms at or close to authorized maxima should be specified." *Id.* at 832 (quoting S. Rep. No. 98-225 (1983)) (internal quotation marks omitted).  On the contrary, § 994(h) establishes only "the minimum obligation of the Commission," *United States v. Damerville*, 27 F.3d 254, 257 (7th Cir. 1994), or "the irreducible minimum that the Commission must do by way of a career offender guideline," *United States v. Piper*, 35 F.3d 611, 618 (1st Cir.

---

[2] Section 994(h) "provides a narrow list of drug offenses that require the 'at or near the maximum' career offender treatment, including distribution under [21 U.S.C.] § 841, importation of certain controlled substances under 21 U.S.C. § 952(a), and manufacturing and distributing on board vessels under 46 U.S.C. § 70503." *United States v. Knox*, 573 F.3d 441, 448 (7th Cir. 2009).

1994).  Under its extensive statutory authority to develop the guidelines, *see* 28 U.S.C. § 994(a)–(f); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 692 (8th Cir. 1995) (en banc), the Commission may go beyond the minimum requirements of § 994(h), so long as the resulting guidelines do not conflict with any "specific directives of Congress," *LaBonte*, 520 U.S. at 757.  Thus, because section 994(h) does not limit career offender status to defendants with two predicate federal convictions, the Commission did not exceed the scope of its delegated authority by including prior state convictions as an additional basis for career offender status. *Cf. Heim*, 15 F.3d at 832.

## III

Stewart also challenges the substantive reasonableness of his 120-month sentence.  Neither party challenges the district court's sentencing procedure, so we evaluate the substantive reasonableness of Stewart's sentence under an abuse of discretion standard.  *See United States v. Edwards*, 595 F.3d 1004, 1014 (9th Cir. 2010).  We consider the totality of the circumstances, including the degree of the court's variance from the guidelines sentencing range and its discretionary weighing of the factors set forth in 18 U.S.C. § 3553(a).  *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).  "[A]lthough the 'Guidelines should be the starting point and the initial benchmark,' district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for 'reasonableness.'"  *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011) (quoting *United States v. Gall*, 552 U.S. 38, 49–51 (2007)).  "[W]e may reverse if, upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of

judgment in the conclusion it reached upon weighing the relevant factors." *United States v. Ressam*, 679 F.3d 1069, 1087 (9th Cir. 2012) (en banc) (quoting *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009)) (internal quotation marks omitted).

There is no dispute that Stewart's third drug distribution conviction qualified him as a career offender under the guidelines. As a career offender, Stewart's offense level was set by reference to the 20-year statutory maximum penalty for distributing GHB, a penalty that applies regardless of the quantity or purity of GHB involved in the offense. *See* U.S.S.G. § 4B1.1(b)(3); 21 U.S.C. § 841(b)(1)(C).[3] Based on this offense level and the criminal history category of VI imposed by the career offender guidelines, the district court correctly calculated Stewart's guidelines range as 151 to 188 months' imprisonment, after a three-level downward adjustment for acceptance of responsibility.

Acknowledging its authority to depart below this recommended sentencing range, the court imposed a 120-month sentence, 31 months below the low end of the applicable career offender guidelines range. Stewart

---

[3] In this respect, GHB is different from other controlled substances. For many controlled substances, including marijuana, cocaine, methamphetamine and heroin, the statutory maximum is tied to the quantity of drugs involved in the offense. *See* 21 U.S.C. § 841(b)(1)(A)–(B), (D). As a consequence, the offense level under the career offender guidelines for offenses involving these drugs may increase as drug quantity increases. *See* U.S.S.G. § 4B1.1(b). For GHB, however, there is a single statutory maximum of 20 years regardless of the quantity of GHB involved. Thus, for purposes of determining Stewart's offense level under the career offender guidelines, the quantity of GHB involved in his offense is immaterial.

nevertheless argues that his sentence is unreasonable because of (1) the very low purity of the GHB mixture involved in the offense; (2) the career offender guidelines' over-representation of the seriousness of his criminal history and risk of recidivism; and (3) the systemic shortcomings of the career offender provisions as applied in any case, including his.

The district court explicitly considered and rejected Stewart's arguments in light of the guidelines and the § 3553(a) factors, making an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 50. As we shall explain, the district court was likely mistaken in its assumption about the significance of the GHB mixture's purity under the non-career offender guidelines. Nonetheless, we affirm the reasonableness of Stewart's sentence under the totality of the circumstances. Stewart was indisputably a career offender, and the district court correctly calculated his applicable guidelines range and otherwise evaluated the relevant factors in sentencing him to a below-guidelines sentence.

## A. Purity or Concentration of GHB Mixture

Stewart contends that the extremely low purity of the GHB mixture warranted a significant variance from the career offender guidelines, and that even a below-guideline, 120-month sentence was unreasonable. According to laboratory testing, one sample of the liquid Stewart sold contained 0.055% pure GHB. Another sample contained just 0.046% GHB. When used for approved therapeutic purposes, GHB is distributed in a solution of 50% purity – over 900 times more concentrated than the most concentrated mixture Stewart sold to the undercover agent. Stated another way,

Stewart sold about three gallons of water that contained roughly five to six total grams of dissolved GHB. This is the equivalent of only a single prescribed dose of GHB, or a maximum of six "doses" for illicit purposes.[4]

The district court accepted Stewart's evidence of low purity but rejected his argument for a variance. Agreeing with the presentence report (PSR), it concluded that absent the career offender provisions, Stewart would be sentenced based on the entire 11 liters of the GHB mixture he sold without regard to purity, yielding a guidelines range of 46 to 57 months.[5] Because the district court viewed purity as irrelevant for determining drug quantity under the guidelines, it found that the very low purity of the GHB mixture was irrelevant to any variance from the career offender provisions.

We disagree with the district court's conclusion that Stewart's non-career-offender sentencing range would have been based on 11 liters of GHB. First, purity or dilution is a relevant consideration for crafting a sentence that is "sufficient, but not greater than necessary," under § 3553(a). Just as an upward variance or departure may be justified

---

[4] *See* U.S. Dep't of Justice, Drug Enforcement Admin., Drugs of Abuse: A DEA Resource Guide 54 (2011 ed.) (stating that the average dose of GHB when illicitly used is approximately one to five grams), *available at* http://www.justice.gov/dea/pr/multimedia-library/publications/drug_of_abuse.pdf.

[5] Under the guidelines, one milliliter or gram of GHB is the equivalent of 8.8 grams of marijuana for purposes of calculating a base offense level. *See* U.S.S.G. § 2D1.1 cmt. n.8(D). Thus, without accounting for purity, the 11,359 milliliters of the GHB mixture Stewart distributed yields an offense level of 24, and after a reduction for acceptance of responsibility, a guidelines range of 46 to 57 months' imprisonment based on his category III criminal history.

based on the unusually high purity of a drug, *see* U.S.S.G. § 2D1.1 cmt. n.26(C), a downward variance for a mixture of unusually low purity may be justified in appropriate circumstances to better reflect the nature and seriousness of the offense, *see* 18 U.S.C. § 3553(a)(1)–(2).

Second, the district court was likely mistaken in its assumption about the significance of the GHB mixture's purity under the non-career offender guidelines. Typically, drug quantity under the guidelines includes the entire weight or volume of any mixture containing a detectable amount of controlled substance, without regard to purity or concentration. *See* U.S.S.G. § 2D1.1(c) n.(A). For the weight or volume of a mixture to be considered in its entirety, however, it first must be useable as an illicit drug. *See United States v. Sprague*, 135 F.3d 1301, 1305 (9th Cir. 1998) (holding that under the "marketable material approach," "the weight of an unusable material mixed with a controlled substance should not be included in the weight for sentencing"). Therefore, a defendant's drug quantity "does not include materials that must be separated from the controlled substance before the controlled substance can be used," whether or not the materials can in fact be separated. U.S.S.G. § 2D1.1 cmt. n.1; *see also United States v. Byfield*, 391 F.3d 277, 280 (D.C. Cir. 2004) ("[U]sability [is] essential for calculating the weight of a drug quantity for § 2D1.1 sentencing purposes."); *United States v. Stewart*, 361 F.3d 373, 377 (7th Cir. 2004) ("[O]nly usable or consumable mixtures or substances are included in the drug quantity for sentencing purposes.").

We have explained that "packaging material" and "the weight of waste washings in a mixture containing only trace amounts of a controlled substance" are two examples of

substances that must "be separated from the [controlled substance] before it could be used." *Sprague*, 135 F.3d at 1305–06. "On the other hand, the weight of a consumable cutting or diluting agent used to increase the total amount of a *marketable* controlled substance would not be excluded *as it need not be separated* to render the drug useable." *Id.* at 1305 (emphasis added).

Although we have not located any case specifically addressing highly diluted GHB, courts have addressed analogous circumstances for other controlled substances. In *United States v. Robins*, 967 F.2d 1387 (9th Cir. 1992), for example, we held that the weight of cornmeal mixed with cocaine should not be used in determining the base offense level, because the 2,779 grams of cornmeal at issue "had to be separated from the [one-tenth of a gram of] cocaine before the cocaine could be effectively used." *Id.* at 1388–89. The cornmeal was "the functional equivalent of packaging material," because the cornmeal-cocaine mixture could not be used without separating out the drug first. *Id.* at 1389. As did Stewart here, the defendant in *Robins* attempted to defraud an undercover agent by masking the very small quantity of a controlled substance actually being sold. *Id.* at 1388.

When confronted with an unuseable or unmarketable mixture, "rather than weighing everything, [a district court should] . . . include only the amount of usable or consumable substances, or the amount of drug that the defendant could have extracted from something that is unusable at the time of arrest." *Stewart*, 361 F.3d at 378–79 (internal citations omitted). This logic has been applied to an "unmarketable" mixture containing over 1000 grams of sugar and only 10 grams of cocaine, *see United States v. Jackson*, 115 F.3d 843, 848–49 (11th Cir. 1997); a mixture containing

methamphetamine and other substances that had to be evaporated or filtered out before the drug could be used, *see Sprague*, 135 F.3d at 1306; a solution of waste water containing a trace amount of cocaine, *see United States v. Johnson*, 999 F.2d 1192, 1196–97 (7th Cir. 1993); and large quantities of cocaine diluted in wine or liqueur, *see United States v. Palacios-Molina*, 7 F.3d 49, 54 (5th Cir. 1993); *United States v. Acosta*, 963 F.2d 551, 554–56 (2d Cir. 1992). *But see United States v. Berroa-Medrano*, 303 F.3d 277, 283–84 (3d Cir. 2002) (holding that a defendant who agreed to sell a package containing one kilogram of common heroin cutting agents and only a trace amount of heroin is accountable for the entire weight of the package). This is in contrast to those cases where, despite dilution or contamination, the controlled substance mixture "was ready for sale and for use as it was." *United States v. Coleman*, 166 F.3d 428, 432 (2d Cir. 1999) (emphasis omitted).

Thus, when GHB is dissolved in water at a useable concentration, the entire volume of the GHB mixture must be considered in determining drug quantity, because the water serves only as a dilutant of the GHB, facilitating its use and distribution. *See Sprague*, 135 F.3d at 1305. On the other hand, when reliable scientific evidence shows that GHB is diluted past the point of usability, the drug quantity should be based on an approximation of the amount of usable GHB mixture dissolved in the total liquid. *See* U.S.S.G. § 2D1.1 cmt. n.1. The water is not merely a dilutant in this latter circumstance, but a "material[] that must be separated from the [GHB] before the [GHB] can be used." *Id*. An unuseable GHB mixture "[does] not constitute 'a drug product moving through the chain of distribution in the manner envisioned by Congress.'" *Robins*, 967 F.2d at 1390 (quoting *United States v. Chan Yu-Chong*, 920 F.2d 594, 597 (9th Cir. 1990)).

The district court understandably did not analyze the usability of Stewart's GHB mixture because Stewart did not raise the issue of usability in the district court. We strongly suspect, however, that the GHB mixture was unusable, which would have a significant effect on Stewart's non-career offender guidelines range. At the concentration Stewart sold the mixture (0.00055 grams of GHB per milliliter of water), one would have to consume about a *half-gallon* of liquid to obtain a single "usable" dose of GHB, even assuming that GHB this dilute would have any effect at all. If the GHB was in fact unusable, the relevant benchmark for purposes of sentencing would be an approximation of the amount of usable mixture he distributed, that is, a useable solution containing six grams of dissolved GHB. *See Stewart*, 361 F.3d at 378–79 (holding that a court must determine "the amount of drug that the defendant could have extracted from something that is unusable at the time of arrest"); *Acosta*, 963 F.2d at 555 (holding that a sentence should "be based on the amount of the usable mixture – not the pure cocaine, but the cocaine mixed with the ingestible cutting agents" (citing *United States v. Rolande-Gabriel*, 938 F.2d 1231, 1237 (11th Cir. 1991)).[6,7]

---

[6] Here, for example, the drug quantity might be one liter or less, based on the total volume of liquid in which six grams of pure GHB could be diluted to produce a usable product.

[7] The district court also reasoned that no variance was warranted because, given the price Stewart charged for the GHB, he "intended his buyers to believe that his product was of a sufficient purity to produce an intended effect." In these circumstances, the court concluded that Stewart would be held accountable for the entire volume of the GHB mixture under the non-career offender guidelines, whether or not the GHB was usable. We again disagree. A defendant who agrees to sell a specified quantity of a controlled substance is typically held accountable for the agreed-upon quantity, "*unless* the sale is completed and the amount

Accordingly, Stewart's non-career offender guidelines range likely would have been far lower than the 46 to 57 months calculated by the district court, based on a much smaller volume of usable GHB mixture. Moreover, whether or not the district court miscalculated Stewart's non-career offender range, the purity or diluteness of a drug mixture can be a relevant factor for determining whether a sentence is "sufficient, but not greater than necessary" under § 3553(a). The district court was incorrect to presume otherwise.

## B.  Career Offender Guidelines

Stewart also argues that his sentence is unreasonable because the career offender guidelines over-represent the seriousness of his criminal history and risk of recidivism, and that the these provisions are inherently flawed as applied in any case.  He contends he was a low-level dealer selling drugs to support his own addiction, and his two past drug distribution crimes were only minor offenses.  The district court rejected his arguments, although it nonetheless varied downward, and its reasoning is supported by the record.

The court properly recognized that it could give less deference to or depart from the career offender provisions based on either Stewart's individual circumstances or a general policy disagreement with the provisions, *see United States v. Henderson*, 649 F.3d 955, 964 (9th Cir. 2011);

---

delivered more accurately reflects the scale of the offense."  U.S.S.G. § 2D1.1 cmt. n.5 (emphasis added).  Here, Stewart may have agreed to sell gallons of usable GHB to the agent, but he delivered a large amount of an apparently unusable product.  Properly taking usability into account, the amount of usable drug product Stewart delivered would "more accurately reflect[] the scale of [his] offense."  *Id.*

*United States v. Mitchell*, 624 F.3d 1023, 1027–30 (9th Cir. 2010), but it found that application of these provisions would not "result[] in a sentence greater than necessary" in this case. In the court's view, Stewart had "demonstrated a willingness to engage in criminal conduct," and it accurately observed that "both of his prior convictions as with the present conviction concern not only a series of escalating transactions but a demonstrated willingness . . . to engage in sales of greater amounts of the controlled substances." The court's determination that "[d]espite two prior convictions, each with increasingly severe sentences, [Stewart] has demonstrated that he will not be deterred from further criminal action," is supported by the record. The district court therefore reasonably concluded that the substantial increase in sentence called for by the career offender provision was not "unwarranted or greater than necessary in the circumstances of this case," because it would serve "to protect the public from further criminal action by [Stewart]."

Stewart has a different view of the seriousness of his past offenses than the district court, but the district court's interpretation of Stewart's criminal history and potential for recidivism was not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Treadwell*, 593 F.3d 990, 999 (9th Cir. 2010) (quoting *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir.2009) (en banc)) (internal quotation marks omitted). Its findings also accord with the policy behind the career offender guidelines, which focuses on enhancing the penalties of recidivist distributors of controlled substances. *See Rivera*, 996 F.2d at 996; *United States v. Sanchez*, 517 F.3d 651, 668 (2d Cir. 2008) ("[Section] 994(h) reflects Congress's policy judgment that . . . drug trafficking felonies generally warrant more severe sentences when committed by recidivists than

when committed by first- or second-time offenders."). The district court could have disagreed with the policy behind the career offender guidelines and sentenced Stewart accordingly, but it was not required to do so. *See Mitchell*, 624 F.3d at 1030.

## C. Totality of the Circumstances

Considering the totality of the circumstances, the district court did not abuse its discretion in sentencing Stewart to 120 months' imprisonment. As explained, the district court relied on a mistaken assumption when it declined to vary from the career offender guidelines based on the purity of the GHB mixture. But we are not persuaded the mistake affected the court's choice of sentence or the overall reasonableness of the sentence it chose. The purity and usability of a drug mixture are but a few of the many relevant factors that weigh into imposition of an individualized sentence under § 3553(a). *Cf. Treadwell*, 593 F.3d at 1012. Fundamentally, the district court based Stewart's sentence on its agreement with the sentencing range provided by the career offender guidelines, a range that does not depend on the quantity of GHB – usable or otherwise – involved in an offense. The court reasonably explained why no variance from these provisions would be justified based on Stewart's criminal history. It then varied downward by 31 months from the low end of Stewart's career offender guidelines range with the hope that Stewart would rehabilitate himself while incarcerated. We afford "due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence." *Gall*, 552 U.S. at 59–60. Although we may "think a different sentence is appropriate," *Carty*, 520 F.3d at 993, the district court did not make "a clear error of judgment in the conclusion it reached upon weighing the relevant factors,"

*Ressam*, 679 F.3d at 1087 (quoting *Amezcua-Vasquez*, 567 F.3d at 1055) (internal quotation marks omitted).

## IV

For the foregoing reasons, we affirm Stewart's sentence.

**AFFIRMED.**