# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3772

_____

United States of America

*Plaintiff - Appellee*

v.

Pablo Ortega

*Defendant - Appellant*

_____

No. 16-3777

_____

United States of America

*Plaintiff - Appellee*

v.

Pablo Ortega

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Northern District of Iowa - Ft. Dodge

_____

Submitted: September 21, 2017
Filed: November 28, 2017
[Unpublished]

_____

Before SMITH, Chief Judge, WOLLMAN and GRUENDER, Circuit Judges.
_____

PER CURIAM.

Pablo Ortega was serving a term of supervised release when he was arrested for possessing methamphetamine with intent to distribute. The district court[1] revoked his supervised release and sentenced him to 60 months' imprisonment for violating the conditions of his release. Ortega pleaded guilty to possession with intent to distribute a mixture or substance containing five grams or more of actual (pure) methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and was sentenced to eighty-seven months' imprisonment.

Ortega challenges his revocation sentence, arguing that the court failed to explain its reasoning and imposed a substantively unreasonable sentence. He argues that the district court erred in calculating the drug quantity attributable to him and in imposing Global Positioning System (GPS) monitoring as a special condition of supervised release. We affirm.

Ortega was convicted in 2001 of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(b)(1)(A). He was sentenced to 188 months' imprisonment, followed by a five-year term of supervised release, which began to run in December 2014.

In October 2015, the United States Probation Office received information that Ortega was involved in illegal drug activity and was associating with felons. Based

_____

[1]The Honorable Linda R. Reade, then Chief Judge, United States District Court for the Northern District of Iowa.

on this information, officers searched Ortega's residence, where they discovered "ice" methamphetamine, along with car keys registered to known felons.[2]

The Probation Office petitioned to revoke Ortega's term of supervised release. After being indicted on the above-described federal offenses, Ortega pleaded guilty to possession with intent to distribute 35.28 grams of a mixture or substance containing five grams or more of actual (pure) methamphetamine. Laboratory analysis of the methamphetamine determined the substance was between 93.9% and 100% pure.

The district court held a joint revocation and sentencing hearing. With respect to the revocation, Ortega admitted that he had failed to participate in urinalysis testing, that he had associated with a felon or person engaged in criminal activity, that he had possessed a controlled substance and that he had committed the drug-law violation. Because Ortega's possession with intent to distribute constituted a Grade A violation, revocation was mandatory. See U.S.S.G. § 7B1.3(a)(1) (stating "[u]pon a finding of a Grade A or Grade B violation, the court shall revoke probation or supervised release"). The government requested the five-year statutory maximum term of imprisonment. See 18 U.S.C. § 3583(e)(3). Defense counsel requested a sentence within the Guidelines range of 30 to 37 months' imprisonment. As set forth above, the district court imposed a sentence of 60 months' imprisonment.

With respect to the methamphetamine offense, the presentence report recommended that electronic monitoring be imposed as a condition of supervised release and attributed 33.13 grams of actual methamphetamine to Ortega (35.28 grams x 93.9% = 33.13 grams of actual methamphetamine), resulting in a base

_____

[2]"'Ice' is a purer, more potent form of methamphetamine." United States v. Walker, 688 F.3d 416, 426 n.2 (8th Cir. 2012). The United States Sentencing Guidelines (Guidelines) define "ice" as "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." U.S.S.G. § 2D1.1(c) n.C.

offense level of 26. See U.S.S.G. § 2D1.1(c)(7) (at least twenty grams but less than thirty-five grams of methamphetamine (actual)). The government objected to this calculation, arguing that for sentencing purposes the drug quantity used should be 35.28 grams of "ice" methamphetamine, equating to a base offense level of 28. See U.S.S.G. § 2D1.1(c)(6) (at least thirty-five grams but less than fifty grams of "ice"). Ortega agreed with the Probation Office's drug quantity calculation, but argued that he should not be placed on electronic monitoring during his term of supervised release.

A Probation Officer testified that Ortega had written two letters that revealed the identity of a confidential informant who had incriminated Ortega. The district court rejected the government's argument that Ortega's disclosure of the informant's identity constituted an obstruction of justice and thus did not apply the requested offense-level enhancement.

The district court determined that Ortega's base offense level was 28 based on the total grams of "ice" methamphetamine. After reducing the base offense level by three for Ortega's acceptance of responsibility, see U.S.S.G. § 2E1.1, the district court found that Ortega's total offense level was 25, resulting in an advisory Guidelines sentencing range of 70 to 87 months.

The district court sentenced Ortega to 87 months' imprisonment, to run consecutively to the revocation sentence. The court also imposed a five-year term of supervised release, which included GPS monitoring as a special condition. In reaching this decision, the district court considered Ortega's age, education, dependents, limited employment, and the eighteen disciplinary reports Ortega had received while incarcerated. It found Ortega to be a recidivist drug dealer, noting that he now had two federal convictions for drug distribution. The court further found that Ortega's two letters "basically out[ed] an informant and potentially invit[ed] retaliation against her." It also took into account the reported threat to a federal judge

in the underlying case in which Ortega was subjected to GPS monitoring while on supervised release.

## Revocation Sentence

Ortega contends that the district court committed procedural error by failing to adequately explain its reasoning for the revocation sentence. "We review a district court's revocation sentencing decisions using the same standards that we apply to initial sentencing decisions." United States v. Miller, 557 F.3d 910, 915-16 (8th Cir. 2009) (citing United States v. Cotton, 399 F.3d 913, 916 (8th Cir. 2005)). "A district court is not required to make specific findings; all that is generally required to satisfy the appellate court is evidence that the district court was aware of the relevant factors." United States v. Perkins, 526 F.3d 1107, 1110 (8th Cir. 2008). When its sentence varies from the advisory Guidelines range, we give "due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance." Gall v. United States, 552 U.S. 38, 51 (2007).

Given Ortega's failure to object to the district court's allegedly inadequate explanation of its reasons for the revocation sentence, we review for plain error. Miller, 557 F.3d at 916. In addition to the earlier set-forth conditions, the district court noted that Ortega had had one disciplinary report while staying at a residential facility center. The court went on to explain that "[a]fter considering the 3553(a) factors of Title 18 that apply in a revocation situation, this is a serious violation of trust, a serious new law violation. Clearly, Mr. Ortega is at a high risk to recidivate." It ultimately concluded that GPS monitoring would not "involve any greater deprivation of liberty than necessary to afford deterrence and protect the public." It is clear from these comments that the district court was aware of and considered the relevant sentencing factors and that it thus committed no error, plain or otherwise, in varying from the advisory Guidelines sentencing range.

Ortega's argument that his revocation sentence is substantively unreasonable because it is greater than necessary to satisfy the sentencing goals of 18 U.S.C. § 3553(a) fails in light of his multiple violations of his conditions of supervised release, his new drug distribution offense, his high risk of recidivism, and his history of noncompliance.

Drug Quantity

Ortega contends the district court erred in determining that his base offense level was 28. We review the district court's application of the Guidelines *de novo*. United States v. Miller, 511 F.3d 821, 823 (8th Cir. 2008). "The district court's drug quantity and identity determinations are factual findings, which we review 'for clear error, applying the preponderance-of-the-evidence standard.'" United States v. Walker, 688 F.3d 416, 420 (8th Cir. 2012) (quoting United States v. Turner, 603 F.3d 468, 471 (8th Cir. 2010)).

The Guidelines permit two different methods for determining a defendant's base offense level in cases involving methamphetamine. United States v. Fairchild, 189 F.3d 769, 778 (8th Cir. 1999); see United States v. Garcia-Panama, 432 F. App'x 641, 643 n.2 (8th Cir. 2011) (unpublished) (per curiam). The government may perform a purity determination by multiplying the percentage of pure methamphetamine by the total amount of the mixture to get the "actual" amount of methamphetamine. United States v. Houston, 338 F.3d 876, 879 (8th Cir. 2003). Alternatively, the government is allowed to apply the entire weight of any mixture or substance containing a detectable amount of methamphetamine. Fairchild, 189 F.3d at 778-79; see also U.S.S.G. § 2D1.1 n.A. Stated differently, under the second method, "'drug quantity under the guidelines includes the entire weight or volume of any mixture containing a detectable amount of controlled substance without regard to purity or concentration.'" United States v. Ramos, 814 F.3d 910, 920 (8th Cir. 2016) (quoting United States v. Stewart, 761 F.3d 993, 1001 (9th Cir. 2014)). The

-6-

Guidelines instruct the district court to use whichever method produces a higher base offense level. U.S.S.G. § 2D1.1(a); see Garcia-Panama, 432 F. App'x at 643 n.2.

Ortega concedes that the 35.28 grams of methamphetamine found at his residence was 93.9% pure. The mixture therefore falls under the Guidelines definition of "ice." See U.S.S.G. § 2D1.1(c) n.C. Accordingly, the district court was required to choose to either apply the actual weight of the methamphetamine found at Ortega's residence or the weight of the entire "ice" substance or mixture, depending on which determination would produce a higher base offense level. Because the 35.28 grams of "ice" established a based offense level of 28 and the 33.13 grams of actual methamphetamine established a base offense level of 26, the district court correctly chose to use the entire weight of the "ice" methamphetamine mixture in determining the drug quantity.

Electronic Monitoring

Ortega first argues that the district court procedurally erred by relying on the contested fact that Ortega had threatened a federal district court judge. Assuming that Ortega has preserved this claim of error, we conclude that it is without merit. As we read the record, the district court made no specific finding that such a threat had been made, saying only that "[w]e have to keep in mind that there was a threat reported against [the judge] in the underlying case that you were on supervised release for."

Ortega alternatively argues that the district court abused its discretion in imposing GPS monitoring as a special condition of his supervised release. He contends that without evidence that he had attempted to act on any threats, GPS monitoring is not necessary and that any safety concerns could have been addressed by including a "no contact" condition.

The district court has "wide discretion in imposing supervised release conditions." United States v. Jorge-Salgado, 520 F.3d 840, 842 (8th Cir. 2008)

-7-

(internal citations omitted). Conditions imposed by the district court, however, must be reasonably related to the sentencing factors set forth in 18 U.S.C. § 3553(a), and "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes identified in § 3553(a). 18 U.S.C. § 3583(d)(2); see also United States v. Ringgenberg, 494 F. App'x 685, 685 (8th Cir. 2012) (unpublished) (per curiam). Relevant factors that the court may consider are the history and characteristics of the defendant and the protection of the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(1), (a)(2)(C).

In light of Ortega's above-recounted history and characteristics, we conclude that the district court did not abuse its discretion in imposing GPS monitoring as a condition of supervised release. Given that history and those characteristics, it was reasonable for the court to doubt whether Ortega would comply with a no contact order and to conclude that the requirement of GPS monitoring was necessary to ensure the safety of others.

The judgment is affirmed.

_____